**Otis J. TATE, Inmate #F–4052 State Correctional Institution, on behalf of himself and others similarly situated**

**v.**

**Stewart WERNER, Commissioner Pennsylvania Bureau of Corrections,**
**and**
**Robert J. Johnson, Superintendent State Correctional Institution, Individually and in their official capacities.**

**Civ. A. No. 74–1418.**

United States District Court,
E. D. Pennsylvania.

Oct. 8, 1975.

Keith Welks, John Whitfield, Law Students, Indigent Prisoner Program, University of Pennsylvania Law School, Philadelphia, Pa., for plaintiffs.

Glenn Gilman, Deputy Atty. Gen., Philadelphia, Pa., for Stewart Werner.

Steven R. Waxman, Philadelphia, Pa., for Robert J. Johnson.

## MEMORANDUM AND ORDER

FOGEL, District Judge.

Before us for determination are the following documents: (1) a motion to dismiss an appeal, (2) a petition for transcripts of the proceedings in this Court, and (3) a pro se paper entitled "Motion for Relief from the Order". All of these papers relate to a civil rights class action which was dismissed, pursuant to Rule 23(b) of the Local Rules of Civil Procedure for the Eastern District of Pennsylvania (Local Rules). Dismissal had followed a final hearing which was held after notice to the members of the class. At the final hearing, a consent decree which had previously been agreed to by the parties was approved by the Court. The decree dismissed one count of the action because the issues raised, relating to the creation and maintenance of an adequate law library in a state prison, were the subject of a class action that had already been certified prior to the filing of this suit, and which was presently in litigation before another judge in this district. The other count of the complaint, alleging discrimination in the operation of the law clinic at the prison facility, was dealt with through a stipulation not

to discriminate, and the suit was dismissed as to that count in the manner provided for settlements in the Local Rules.

■ We have received a notice of appeal to the Court of Appeals for this Circuit. It would appear from a subsequent motion to this Court seeking enforcement of the Consent Decree that the appeal relates only to the dismissal of the law library count. However, because the appeal is ambiguous, we will deal with both counts. As to both counts, we conclude that leave to proceed in forma pauperis on appeal should be denied, because the appeal is frivolous and of no merit.* We have ordered preparation of the transcripts in connection with our consideration of the motion to dismiss the appeal. We also will deny the motion for relief from the order.

## BACKGROUND STATEMENT

Plaintiffs are a class of inmates of the Commonwealth of Pennsylvania

Correctional Institution located at Graterford, Pennsylvania (Graterford). The defendants are Stewart Werner, Commissioner of the Pennsylvania Board of Corrections, and Robert Johnson, Superintendent of Graterford. The named plaintiffs, Otis Tate and Monserrate Zapata, filed suit in forma pauperis [1] alleging that there was discrimination in connection with the availability of the services of the Para-professional Law Clinic to them and others similarly situated, and that there was not an adequate law library for the use of Graterford inmates. The cause of action was founded upon 42 U.S.C. § 1983,[2] and jurisdiction was alleged under 28 U.S.C. § 1343(3).[3] We granted the petition to proceed in forma pauperis, and appointed a law student from the Indigent Prisoner Law Program at the University of Pennsylvania to assist the plaintiffs.[4]

At a review of the matter with counsel, we pointed out that any determination by us would affect the Law Clinic.

---

* Prior to filing this Opinion, the appeal was docketed. We therefore no longer have jurisdiction to dismiss the appeal, and accordingly will deny the motion.

1. 28 U.S.C. § 1915(a) provides:
 (a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress.
 An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

2. 42 U.S.C. § 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the

party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. 28 U.S.C. § 1343(3) provides:
 The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

 . . . . .

 (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States . . ..

4. Local Rule 9½ provides in part:
 I. Activities
 A. An eligible law student may appear in this court on behalf of any indigent prisoner if the person on whose behalf he is appearing has indicated in writing his consent to that appearance and the supervising lawyer has also indicated in writing, approval of that appearance, in the following matters:
 1. *Any civil rights matter.*
 In such cases eligible law students shall represent prisoners in cases to which they have been assigned at all pretrial stages in-

It also was clear that the interests of the members of the Law Clinic were not properly represented. We therefore stated that, in our opinion, the law clinic was an appropriate party to be joined, in order to secure a just adjudication of the matter, as contemplated in Rule 19(a) of the Federal Rules of Civil Procedure (FRCP).[5] However, it became unnecessary to issue such an order, because a petition to intervene was entered by the President of the Law Clinic in its behalf, as permitted by Rule 24(a)(2) of FRCP.[6] We treated the petition as a motion to intervene under Rule 24(c) and permitted intervention; the Law Clinic then retained counsel for this litigation.

### 1. *Law Library Adequacy Issue*

As we have stated in a previous Opinion in this matter, the law library adequacy issue is before Chief Judge Lord of this District in another action: *Imprisoned Citizens Union (I.C.U.) v. Shapp*, Civil No. 70–3054 (E.D.Pa., filed Nov. 4, 1970). That case was certified as a class action; the class consists of all state prison inmates, including Gra-

terford inmates; and the issues certified include the issue of the adequacy of the library. Under these circumstances, counsel agreed to stipulate to dismissal of this count.

### 2. *Discrimination in the Provision of Legal Services and Materials Issue*

The gist of the settlement proposed with respect to the discrimination claim was that:

(1) *legal services and the provision of materials reasonably related thereto would be made available to all residents by the Para-professional Law Clinic on a non-discriminatory basis;*

(2) the law library located in the school annex of the prison would be operated on a non-discriminatory basis; and

(3) there would be free access to the use of the law library facilities by all residents.

The settlement also provided that none of the parties admitted any wrongdoing. We perceived this to be a practical and just settlement, particularly in view of the hurdles plaintiffs had to vault in order to meet their burden of proof.[7]

---

cluding the taking of depositions without requiring the personal presence of the supervising attorney. When a case comes to trial, it shall be in the court's discretion to require the presence of the supervising attorney.

5. Rule 19(a) of FRCP provides in part:

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if . . . (2) he claims an interest relating to the subject of the action and he is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party.

6. Rule 24(a)(2) of FRCP provides:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action:

. . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

7. Plaintiffs faced a myriad of difficulties. These included, among other matters: (1) finding willing witnesses who would testify to the matters which were the subject of their complaint; (2) the certainty of the testimony of those witnesses they could garner on their behalf; (3) the clear confrontation, and sharp dispute of any evidence they would adduce by witnesses testifying on behalf of the defendants or intervenors; (4) the presence of the intervenor disputing the

### 3. The Consent Decree and First Final Hearing

Under all of the aforementioned circumstances, counsel for the parties and the Court firmly believed that the consent decree which was forumulated would provide a flexible form of relief, and would have a deterrent force in preventing similar acts which would be the basis for future charges of discrimination. In particular, any alleged discrimination would be reviewable as a possible violation of the court decree, and so would be subject to a simplified procedure, rather than a completely *de novo* determination.

The suit was stipulated to be a class action, and so, prior to approval of the settlement, we exercised our power under Rule 23(e) of FRCP [8] to require notice to the class. As the class was entirely composed of individuals confined at Graterford, we deemed the optimum notification procedure to be posting at prominent locations throughout the institution. Any comments or objections were to be directed to the Court, in writing, through the mail. A date was set for a final hearing on the proposed decree, and the Commonwealth was directed to bring both named plaintiffs to the court.

At that hearing, it developed that there was some question about compliance with our order for posting. Accordingly, out of an abundance of caution, and regardless of the receipt of numerous letters through the machinery we had established in order to elicit comments, we issued a second order setting forth new time frames for notice and posting.

We asked the named plaintiffs, who were present at the first hearing pursuant to our order, to affirm or swear before giving testimony. Under oath, they were permitted to make whatever pertinent statements they thought were necessary or desirable. We also questioned each plaintiff with specificity as to his acquiescence in the terms of the settlement. Their responses which affirmed the substance of the agreement, further buttressed the positions they had previously taken, as evidenced by the letters they had sent in accordance with the stipulated procedure for comment. Those letters, together with letters sent by others, were in favor of the settlement. The objections, to the extent that any were made, related only to our decision not to consider the law library issue in this litigation. Not one complaint was registered to the substance of the proposed decree.

### 4. The Second Final Hearing

The events which led to the current spate of motions and petitions developed at the second hearing. At that time, the named plaintiffs, who were again present in court, sought to withdraw their prior written and sworn approval of the decree. No prior notice, in the manner approved and stipulated by the Court, had been given. Their explanation was that they questioned the adequacy of the decree and that they felt that they could prove the alleged discrimination. (T.R. June 19, 1975, at 5). We refused to accept this attempt to withdraw from the prior consent, for the following reasons, which were stated in court:

*First:* plaintiffs had brought their action on behalf of a class, and not just

claim of discrimination; (5) significant legal issues relating to the presence or absence of state action in what was allegedly discriminatory activity by prisoners within a state institution directed toward other prisoners in that institution; and finally (6) the complexity of fashioning a suitable decree to grant relief, were we to reach that point.

8. Rule 23(e) of FRCP provides:
 (e) Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

on their own behalf. The class certification had been agreed to by the parties and the Court, and was included in the decree. The redress which they sought for alleged discriminatory practices was asked for in the name of that class; no other member of the class sought to withdraw his consent or his placement in the class; and the named plaintiffs did not seek the withdrawal on behalf of any other class members.

*Second*: the named plaintiffs had agreed, both in writing and orally under oath in open court, to the terms of this settlement on their own behalf and on behalf of the class they represented.

*Third*: we were concerned with a civil and not a criminal action, one which involved the rights of many individuals.

Had the class response through letters been negative, we could have reviewed the matter in that light. However, the response had been overwhelmingly positive—indeed, unanimous—and no rational or persuasive reason for withdrawing the agreement was presented to us. To the contrary, we believed that the emotional basis for this impetuous action was unfounded in fact, and was inimicable to the best interests of the class, as well as the plaintiffs. We therefore entered our Order of June 19, 1975.

## DISCUSSION

An individual who objects to the dismissal of a class action has a right to appeal from the order of dismissal. *Cohen v. Young,* 127 F.2d 721 (6th Cir. 1942); 3B J. Moore, Federal Practice ¶ 23.80[5] (2d ed. rev. 1975). Leave to proceed on appeal in forma pauperis from the district court to the court of appeals can be obtained either by a motion directed to the district court, together with an affidavit of indigency, a statement of belief of entitlement as to redress, and a statement of the issues to be presented on appeal, or by "right" if the action in the district court was in forma pauperis and the district court does not certify that the appeal is not in good faith or that the party is not entitled so to proceed. Rule 24(a) of The Federal Rules of Appellate Procedure.

The standard to be applied in determining whether an appeal is taken in good faith was set forth in *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962) in connection with a direct appeal from a conviction:

> It is not the burden of the petitioner to show that his appeal has merit, in the sense that he is bound, or even likely, to prevail ultimately. He is to be heard, as is any appellant in a criminal case, if he makes a rational argument on the law or facts. It is the burden of the Government, in opposing an attempted criminal appeal *in forma pauperis,* to show that the appeal is lacking in merit, indeed, that it is so lacking in merit that the court would dismiss the case on motion of the Government, had the case been docketed and a record filed by an appellant able to afford the expense of complying with those requirements.

*Id.* at 448, 82 S.Ct. at 922. We recognize that, by its very terms, *Coppedge* deals with appeals from criminal convictions. *Miranda v. United States,* 458 F.2d 1179 (2d Cir.), *cert. denied,* 409 U.S. 874, 93 S.Ct. 207, 34 L.Ed.2d 126 (1972), a more recent opinion on the standards applicable for determining whether an appeal is taken in good faith, also stemmed from a criminal case, but as a collateral attack. *Miranda* applied the *Coppedge* rule to the collateral action. Since the same rules and statutes apply to and govern petitions to proceed on appeal in forma pauperis both from civil and criminal cases, we believe that the *Coppedge* standard is appropriately applied to civil cases such as this one. *See generally* 9 J. Moore, Federal Practice ¶ 224.02 (2d ed. rev. 1975).

### 1. *Dismissal of Law Library Issue*

 Complaints about the availability of a law library adequately supplied to permit prisoners to prepare petitions to courts have been raised before in this district. One such case, as noted, *I.C.U. v. Shapp*, Civil No. 70–3054 (E. D.Pa., filed Nov. 4, 1970), was certified on October 20, 1972, as a class action, covering all state prison inmates in the Commonwealth of Pennsylvania. Due to the complexity of issues in that case, final resolution has not been reached, either through settlement or through trial. We have no doubts about the adequacy of representation of the plaintiff class in that suit, as many of the attorneys are well-known to this Court and are extremely well-qualified for the litigation. Our suit is also a class action, covering some of the same inmates, and for the same issue. *All* members of the *Tate* class are within the *I.C.U.* class. This is a classic situation where any relief in this Court would possibly conflict with, and at least would circumscribe the flexibility of any relief determination by Chief Judge Lord in *I.C.U. v. Shapp*.

A district court has inherent power to choose among its broad arsenal of remedies when confronted with situations where, as here, continued litigation of a matter would create undue hardship on the litigating parties, or would improvidently circumscribe the actions of another court handling a prior-certified action. *See* 1 J. Moore, Federal Practice ¶ 0.60[6] (2d ed. rev. 1975). We could have stayed the matter with respect to the law library issue only, pending final determination of the question by Judge Lord. *See Rosenfeld v. Schwitzer Corporation*, 251 F.Supp. 758, 763 (S.D.N. Y.1966). However, as the other action was in this forum, and because the parties to our suit were members of the class in *I.C.U. v. Shapp*, and had not opted out of that class, it seemed to us unnecessary to retain the action here. Counsel agreed and stipulated to dismissal of the action on the law library issue.

There was a second significant reason for dismissing the action, instead of staying it. Local Rule 3 provides that:

> Civil cases are deemed related when a case filed . . . involves the same issue of fact or grows out of the same transaction as another suit . . . .

Local Rule 3(c)(3)(B). Ordinarily, counsel is required to indicate the relatedness on a form provided when a case is filed. When the relatedness does not become known until after commencement of an action and assignment to a judge other than the one to whom the original suit was assigned, Local Rule 3(d)(2) provides for the transfer of the later case to the Calendar Committee for reassignment to the judge who is sitting on the earlier case. Because of the clear relationship—indeed, identity of issues—between these two suits, the Court and counsel felt it was unnecessary to make a formal transfer. There was no dispute that the plaintiffs in *Tate* were also plaintiffs in *I.C.U. v. Shapp*, by virtue of the class certification. Accordingly, we agreed to dismiss the action, and the stipulation to that effect was placed in the proposed decree.

We believe that, within our inherent power, in the interest of the efficient and economical administration of justice, and with due deference to a fellow judge handling a prior-filed case covering the same issues, our refusal to permit continued litigation in this court was entirely appropriate. That the termination of litigation was by dismissal instead of by transfer to another judge of this district, or by a stay until that judge will have made a final determination in that case, does not alter our opinion that any appeal would be frivolous and incapable of any different remedy, particularly in light of the fact, as noted, that these plaintiffs are within the class of plaintiffs in the other case in this very district.

### 2. *The Consent Decree*

 The consent decree which was approved by the Court at the final hear-

ing on June 19, 1975, had been reviewed by the named plaintiffs considerably prior to that date. Both individuals had written to this Court expressing their approval of its substance and form. In open court on May 6, 1975, under oath, each individual repeated his approval of the form and the substance of the proposed decree. But for this Court's caution in the light of possible, though unsubstantiated, non-compliance with the Order for posting, the decree would have been approved at that time. Because of our caution, and despite the many letters already received through the allegedly defective machinery for notice and comment, we ordered additional posting and a second hearing. No further written comments were received from Mr. Tate or Mr. Zapata. Their oral declaration in court on June 19, 1975, of a desire to withdraw from the decree came without premonition or notice, and without any changed or newly arisen substantive basis.

While it is possible for a court to overstep in settling a class action, this is not such a case. The Third Circuit has recently reviewed the standards for settling class action suits. *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). To the extent that those guidelines apply to a civil rights suit, the requirements were satisfied. Notice to the class was adequately made by posting, because (1) the class was highly concentrated in a single facility, (2) cost in an in forma pauperis action was a significant factor, (3) determining the names of individual class members would have been unduly burdensome, and would not have guaranteed perfect coverage in view of non-static membership of the plaintiff class, and (4) there was an existing regular procedure in the Institution for posting of important notices. We were satisfied by sworn testimony and affidavits offered at the second hearing that our Order for posting had been fully complied with.

Unlike *Girsh*, *Tate* does not involve any monetary settlement. The maximum potential relief would have been a declaratory judgment and an injunction. We were well aware of the subtlety of the alleged discrimination and the uncertain efficacy of any relief unless all parties were willing to participate in the Court's decree. Under these circumstances, a settlement with a consent decree presented the most appropriate solution to the controversy.

Finally, we had frequently observed plaintiffs' vacillating evaluations of their probability of success in any trial of the issue. The oral declarations on June 19, 1975, without prior notice through the channels provided for just that sort of objection, were not credible, when weighed against the pattern of comments which we received from plaintiffs during the year of activity on this matter. If the objections had been raised subsequent to the dismissal of the action, Local Rule 23(b) would have required a showing of "cause" to reopen the action. No such cause has been shown.

Since the opportunity to make a disapproving declaration had been provided only by our earlier discretionary choice to require a second posting, we exercised our discretion and refused to accept this tardy expression of dissatisfaction.

In *Rarick v. United Steelworkers of America*, 202 F.Supp. 902 (W.D.Pa. 1962), a plaintiff sought relief from a stipulation to dismiss his action with prejudice. The court refused, because:

[h]is decision to stipulate to a dismissal of his action with prejudice was based upon a conscientious and informed estimate by his counsel of his legal chances [and] a weighing of the benefits to be derived against the prospective costs of litigation . . . .

*Id.* at 903. The court added:

there is no hint that plaintiff's counsel did not have authority to enter into the stipulation. There is no evi-

dence that the prospective court costs would be prohibitive or beyond plaintiff's means; he is not by any standard a pauper or even a poor man. There is no evidence that the stipulation was procured by coercion or fraud or under exceptional or compelling circumstances justifying the setting aside of the order of dismissal . . . .

*Id.* at 903–04.[9]

We fully concur with the conclusion of the court in *Rarick*:

[The plaintiff] should not be relieved from a free, calculated and deliberate choice.

*Id.* at 904. Any appeal from our decision in this matter would similarly be frivolous, vexatious, and without any merit.

---

9. While plaintiffs here are not wealthy, they have been permitted to proceed in forma pauperis, under 28 U.S.C. § 1915, and so finances are not a distinction between this case and *Rarick*.