**EXXON CORPORATION, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF ENERGY, Donald P. Hodel, George B. Breznay, and Husky Oil Company, Defendants.**

Civ. A. No. 83–747–JLL.

United States District Court,
D. Delaware.

April 27, 1984.

85

Thomas Herlihy, III of Herlihy, Herlihy, & Harker, Wilmington, Del., Donald B. Craven, Craig D. Miller and Joanne Thomas Asbill of Miller & Chevalier, Chartered, Washington, D.C., and Edward de la Garza of Houston, Tex., of counsel, for plaintiff.

Sue L. Robinson, Asst. U.S. Atty., Wilmington, Del., Mark Kreitman and Arthur S. Weissbrodt, Office of Gen. Counsel, Dept. of Energy, Washington, D.C., of counsel, for defendants U.S. Dept. of Energy, Donald P. Hodel and George B. Breznay.

Bruce M. Stargatt of Young, Conaway, Stargatt & Taylor, Wilmington, Del., David H. Lloyd and Jeffrey A. Burt of Arnold & Porter, Washington, D.C., of counsel, for defendant Husky Oil Co.

## OPINION

LATCHUM, Senior District Judge.

This action seeks to open up a new battle front in this Court on issues which are already under siege and involved in administrative and court proceedings in two other forums. Exxon Corporation applies here for judicial review of a portion of a May 18, 1983 decision (supplemented on December 23, 1983), and issued by the Office of Hearings and Appeals ("OHA") of the Department of Energy ("DOE"). That decision concerned the eligibility of Husky Oil Company ("Husky") for exception relief from DOE's Old Oil Entitlements Program for the period January 1, 1978 through January 27, 1981 when the program ended. Specifically, by that supplemented decision, OHA granted Husky up to $140 million of entitlement exception relief and at the same time denied Husky approximately $26 million of such relief. That part of the decision which denied Husky exception relief is presently under review of the Federal Energy Regulatory Commission ("FERC") and Exxon is participating in that proceeding. The instant case seeks judicial review by this Court on that part of OHA's decision which granted Husky exception relief.

Husky has moved alternatively (1) to dismiss the case, or (2) to transfer the action, pursuant to 28 U.S.C. § 1404, to the United States District Court for the District of Wyoming,[1] or (3) at least, to stay this action pending further review by the FERC.

1. The motion to transfer was orally made at argument. (Docket Item ["D.I."] 25 at 4.)

## I. BACKGROUND FACTS

The undisputed background facts appear as follows: Since 1977 Husky has been involved in proceedings with DOE concerning Husky's posture under the Old Oil Entitlements Program. That program was a means of equalizing crude oil costs among refiners. Generally, refiners with greater than average access to price controlled oil had to pay money to refiners who were more dependent upon uncontrolled oil as a method of equalizing competitive imbalances which would otherwise occur by price controls. Such transactions involved the purchase and sale of "entitlements." Small independent refiners had, by law, a special status in the program.[2] Broadly speaking, such refiners were excepted from entitlement purchases so long as their operating margins on a current basis did not exceed the levels achieved during prescribed "base years." Because Husky had lost money in its historical base years, application of DOE's normal exception criteria could result in entitlement purchases even though Husky was operating at a loss.[3]

Husky sought administrative relief from the consequences of its negative historical profit margin. When Husky sought such relief it was still losing money to a degree that it was excepted from entitlement purchases. Husky's concern, however, was that a determination that its exception application would be judged against a negative historical profit margin would have, prospectively, serious adverse consequences for it.

DOE denied Husky's request for an adjustment in its target profit margin. In a 1977 decision, DOE held that Husky would be required to buy entitlements even if it were losing money. That administrative ruling was overturned by a decision of the United States District Court for the District of Wyoming ("Wyoming District Court") which decision was affirmed in pertinent respects by the Temporary Emergency Court of Appeals. *Husky Oil Company v. Department of Energy*, 447 F.Supp. 339 (D.Wyo.1978), *modified and affirmed*, 582 F.2d 644 (TECA 1978).

The Wyoming District Court, in its March 13, 1978 decision, concluded (1) that the DOE's imposition of a negative profit margin as the standard by which Husky's past and future exception relief would be judged was arbitrary and unjustly discriminated against Husky; and (2) that the underlying rationale employed by DOE was insupportable and contrary to the agency's own rules and the governing statutes. Consequently, it ordered DOE to reopen the proceedings regarding Husky's exception relief and restrained DOE:

"from requiring [the plaintiff to make any additional] entitlement purchases pending [DOE's] determination [of relief.]" *Husky Oil Company v. Department of Energy*, 447 F.Supp. 339, 350 (D.Wyo.1978).

On August 10, 1978, TECA affirmed the ruling of the Wyoming Court. The question presented to TECA was whether the agency could adopt a standard of relief that would require Husky to purchase entitlements for periods when it was operat-

**2.** Section 4(b)(1) of the Emergency Petroleum Allocation Act directed that DOE provide "to the maximum extent practicable" for

"the priority needs to restore and foster competition in refining ... and to preserve the competitive viability of independent [and] small refiners ...." 15 U.S.C. § 753(b)(1)(D). The Conference Report emphasized that the Act was "to offer a mantle of protection to those refiners who by reason of their relatively small size may be disadvantaged in competing with larger refiners...." H.R.Rep. No. 628, 93d Cong., 1st Sess. 17 (November 10, 1973), U.S. Code Cong. & Admin.News 1978, 2582, 2693.

**3.** The margins for the base period were compared with current performances to calculate a small refiner's entitlement relief. Under the program, small refiners were excepted from entitlement purchases to the extent necessary to allow the refiner to achieve its historical level of profit. Thus, small refiners operating below their historical margins were excused from all entitlement purchases.

For a more detailed discussion of the program, *see Cities Service Co. v. FEA*, 529 F.2d 1016 (TECA 1975), *cert. denied*, 426 U.S. 947, 96 S.Ct. 3166, 49 L.Ed.2d 1184 (1976).

ing at a loss, or would sustain losses as a result of such purchases. TECA answered in the negative:

> [R]equiring Husky to operate at a negative (loss) level for purposes of exception relief will discriminate against and unfairly burden it as a competitor and impose a serious special hardship and gross inequity on Husky .... DOE must [now] make those adjustments to Husky's historical profit margin and return on invested capital which will relieve the serious hardship and gross inequity which have resulted from the literal application of the *Delta* [*Refining Co. v. FEA*, 559 F.2d 1190, (TECA 1977)]] standard and the imposition of a negative profit margin ....

582 F.2d at 653.

Thus, DOE was ordered by TECA to reevaluate the standard on the basis of which Husky's requests for relief from entitlement purchases would be judged, "disregarding and not utilizing any negative historical profit margin." [4] (*Id.*) The Wyoming District Court, upon receiving the remand from TECA, remanded the case to DOE on September 20, 1978. In doing so, the Wyoming District Court expressly retained jurisdiction and enjoined DOE from requiring Husky to purchase entitlements pending further administrative and judicial review.

Following the remand, the case apparently languished at DOE until, prompted by the Wyoming Court, the OHA issued, on May 18, 1983, the decision a part of which Exxon challenges in this Court.[5] The May 18, 1983 decision had been preceded by one of February 4, 1983, in which OHA proposed to grant Husky complete relief from all entitlement purchases. In the February proposal, OHA made clear its view that the judicial decisions left it no choice but to grant complete relief.[6] Exxon first appeared in the administrative proceeding in Husky's case by protesting to OHA its February 4, 1983 proposed decision. OHA allowed Exxon to intervene, and Exxon and two other major refiners thereafter participated in the further administrative proceedings which preceded OHA's May 18, 1983 decision.

In the May 18, 1983 decision, as modified on December 23, 1983, OHA proposed to grant Husky a substantial level of relief but, nevertheless, required Husky to purchase in excess of $26 million in entitlements. On May 20, 1983, DOE tendered OHA's proposed decision to the Wyoming District Court as it was required to do under the terms of the Court's Order of January 10, 1983 as modified on March 24, 1983 and May 17, 1983. (D.I. 14, Exs. A & B.)

Husky then filed with the Wyoming Court a motion to set aside the OHA decision on the ground that it was incompatible with the court's prior mandates. Among

---

**4.** TECA modified the Wyoming District Court's opinion in one respect: The appellate court ruled that DOE would not be required to grant Husky exception relief which would "maintain the competitive viability" of Husky's refining and marketing operations. (*Id.*)

**5.** In the five years that have followed the remand, the Wyoming Court had on occasions exercised its supervisory jurisdiction. During that period, the court rejected a DOE contention that an April 17, 1981 administrative decision which did *not* deal with Husky's entitlement posture for the period 1978 through the end of the program in January 1981 discharged DOE's mandate from the courts. Moreover, the OHA decision about which Exxon here complains was issued pursuant to an order of the Wyoming District Court directing that "a final order by the Office of Hearings and Appeals" in Husky's case be issued by June 1, 1983. *See* D.I. 14, Ex. B.

**6.** Because Husky sustained substantial losses in its refining and marketing operations during each of the years in question as well as January 1981, the proposed decision concluded that Husky must necessarily be relieved from all entitlement obligations for that time frame in accordance with the prior court directives:

> If Husky's financial and operating material for the three-year plus period is evaluated under the criteria described above and the historical operating indices required by the terms of the various court decisions are applied, the *Delta* criteria specify that Husky should not be required to purchase the entitlements for its operations during the period January 1, 1978 through January 27, 1981.

February 4, 1983 Proposed Decision at 7.

other things, Husky contended that the OHA decision could not be reconciled with TECA's directive that DOE consider Husky's applications for relief from entitlements purchases "disregarding and not utilizing any negative historical profit margin" since the effect of the decision would be to require Husky to buy more than $26 million in entitlements notwithstanding its ongoing operating losses.

DOE responding to Husky's motion contended that the May 18, 1983 decision was not a final order and that review by the Wyoming District Court prior to the time that Husky had obtained FERC review would be inappropriate.[7] DOE also filed a motion to dismiss the Wyoming Court case on the ground that the Wyoming Court had improperly retained jurisdiction.

While these matters were pending before the Wyoming District Court, Exxon, which has not intervened in the Wyoming proceedings, sued DOE in the United States District Court for the District of Columbia challenging OHA's May 18, 1983 interim decision. Husky was not named as a defendant in that suit. After Exxon filed the District of Columbia action, DOE filed a motion in the Wyoming District Court to transfer Husky's case to the District of Columbia for consolidation with the Exxon suit.[8]

By order of July 21, 1983, the Wyoming District Court denied DOE's motion to dismiss. DOE's dismissal motion was based on the contention that the Wyoming Court

had improperly retained jurisdiction. (D.I. 14, Ex. A.) The Wyoming Court also deferred ruling on Husky's motion to set aside the OHA decision, "pending the resolution of the administrative appeal of the May 18, 1983 Decision and Order which is currently before the Federal Energy Regulatory Commission." (*Id.*) The court also expressly reaffirmed its ongoing injunction against any requirement by DOE that Husky purchase any entitlements by ordering:

> "The Court's injunctive Order of March 14, 1978 shall remain in effect, and the Defendants' [DOE and Secretary] shall therefore be restrained from requiring the Plaintiff [Husky] to purchase any additional entitlements pending a final ruling by this Court.

(*Id.*)

In accordance with the July 21, 1983 order of the Wyoming District Court (D.I. 14, Ex. B), Husky has pursued its petition to FERC for a review of the May 18, 1983 decision. Exxon is a party to that FERC proceeding. The filing of Husky's petition for review by FERC was deferred until January 30, 1984, because of an OHA decision on May 31, 1983 to reconsider the calculations underlying the May 18, 1983 decision.[9]

On November 3, 1983, shortly after Exxon filed its original complaint in this Court (D.I. 1), DOE tentatively announced that it intended to abandon any further Entitlement Notices, and that henceforth any mo-

---

7. FERC itself sought to intervene in the Wyoming proceedings, arguing that the Wyoming District Court should not deal with OHA's tentative decision until the FERC proceedings had run their course. Husky filed a precautionary appeal with FERC because it confronted a statutory time limit for doing so while it was arguing that the court should set aside the proposal. In its precautionary appeal to FERC, Husky referred to the pendency of the proceedings in the Wyoming District Court and observed that if the court granted Husky's motion to set aside, further proceedings before FERC would be mooted.

8. Exxon eventually dismissed the District of Columbia action.

9. After the May 18, 1983 decision of OHA, Gulf Oil Corporation filed a letter with OHA and asserted that OHA made an "unintentional error" in calculating the relief granted Husky. In response to that letter, OHA indicated that it was reconsidering the May 18, 1983 decision, and issued several additional information requests to Husky in July and August 1983. Since OHA was reconsidering the underlying calculations, FERC granted Husky several extensions of time within which to file its petition for review.

On December 23, 1983 OHA issued a decision and order in which it accepted Gulf's position regarding several of the underlying calculations set forth in the May 18, 1983 decision. (D.I. 18, Ex. B.)

nies paid by refiners as a result of the past operations of the Entitlements Program would be channeled to a group of specifically identified refiners still owed monies under the Entitlements Program. 48 Fed. Reg. 50,824 (1983). Exxon was not included in that group of refiners.

As previously noted, Exxon in this action seeks to have this Court review that part of OHA's May 18, 1983 decision, as modified on December 23, 1983, which granted Husky entitlement exception relief of some $140 million on the ground that the portion of OHA's order granting exception relief to Husky is final agency action which is ripe for this Court's review.[10] Also as indicated above, Husky has moved alternatively to dismiss this action, *or* to transfer it to the Wyoming District Court, or to stay this action pending further review by the FERC. Husky asserts three distinct and separate grounds for its alternative motion: (1) that this Court as a matter of comity should not involve itself in the subject matter which is already in litigation in a coordinate court; (2) that because an interwoven issue to the order sought to be reviewed has not finally been decided by the FERC, a decision by the Court would be premature; and (3) Exxon lacks standing because it has no immediate stake in the outcome of the litigation.

DOE takes no position with respect to Husky's motion but argues that this action, whether it had been brought originally in the Wyoming District Court or is now transferred there, could not be adjudicated by Judge Brimmer (who has handled Husky's case since its inception) because he would be disqualified as an owner of Exxon stock.

## II. DISCUSSION

### A. *Interference With Jurisdiction And Injunction Of Coordinate Court*

█ In the light of the rather unique background of the ongoing proceedings in the Wyoming District Court, this Court is convinced that it should not, based on the notion of comity and the orderly administration of justice, become involved in a phase of this litigation that could seriously interfere with the continuing jurisdiction of a coordinate court.

The current state of affairs can be summarized as follows: The Wyoming District Court (1) has continuing jurisdiction over Husky's request for exception entitlement relief, the general subject matter of Exxon's amended complaint in this Court, (2) has enjoined DOE from requiring Husky to purchase entitlements until it has reviewed the agency's final decision being considered by the FERC, (3) has denied the DOE's motion to dismiss the Wyoming case on jurisdictional grounds, (4) has pleadings before it relating to the qualifications of Judge Brimmer of that court to hear the case based on the Judge's ownership of Exxon stock, and (5) has deferred ruling on Husky's motion to set aside the administrative rulings, which are interwoven with Exxon's complaint here, pending further review by the FERC. (D.I. 14, Exs. A, B.)

█ There is no question that if this Court exercised its jurisdiction in this case it would be involving itself in a serious interference with the jurisdiction and outstanding injunction of the Wyoming District Court—a court of coordinate standing. It is well settled that a court which has issued an injunction has continuing power to supervise and modify its injunctions in accordance with changed conditions. *System Federation v. Wright,* 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961). As succinctly stated in *Mann Manufacturing Inc. v. Hortex, Inc.,* 439 F.2d 403 (5th Cir.1971):

When a court is confronted with an action that would involve it in a serious interference with or usurpation of this

---

**10.** Under Section 504 of the Department of Energy Organization Act, the FERC has exclusive jurisdiction over all appeals from *denials* of exception relief. *See DOE v. Brimmer,* 673 F.2d 1287, 1290 (TECA 1982). The United States Court of Appeals for the District of Columbia has ruled that FERC does not have jurisdiction to review *grants* of exception relief. *Texaco, Inc. v. DOE,* 663 F.2d 158 (D.C.Cir.1980).

continuing power, "considerations of comity and orderly administration of justice demand that the nonrendering court should decline jurisdiction ... and remand the parties for their relief to the rendering court, so long as it is apparent that a remedy is available there."

439 F.2d at 408 (footnote omitted). To the same effect are: *Lapin v. Shulton, Inc.*, 333 F.2d 169, 172 (9th Cir.1964), *cert. denied*, 379 U.S. 904, 85 S.Ct. 193, 13 L.Ed.2d 177 (1964); *Torquay Corp. v. Radio Corp. of America*, 2 F.Supp. 841, 844 (S.D.N.Y. 1932).

While Exxon concedes that the outstanding Wyoming District Court injunction would prevent implementation by this Court of the specific relief requested here by Exxon, it argues that if this Court were to grant Exxon's request for injunctive relief, it could stay that injunction upon appeal to TECA. This Court disagrees. It would be unseemly for this Court to go through such useless motions and to meddle into litigation long pending in the Wyoming District Court. Furthermore, for this Court to issue relief, which it would immediately stay, is entirely inconsistent with considerations of comity long recognized by federal courts. Exxon's argument that those considerations do not apply here because Exxon is not presently a party in the Wyoming proceedings has little merit. In *Brittingham v. Commissioner of Internal Revenue*, 451 F.2d 315, 318 (4th Cir.1971), which affirmed the dismissal of an action by a non-party to the first proceeding, the Court stated as one reason for the dismissal:

"[C]omity dictates that courts of coordinate jurisdiction not review, enjoin or otherwise interfere with one another's jurisdiction."

451 F.2d at 318.

To a similar effect is *Common Cause v. Judicial Ethics Committee*, 473 F.Supp. 1251 (D.D.C.1979). In that case, the United States District Court for the Eastern District of Louisiana issued an injunction prohibiting the defendants from releasing certain disclosure statements. The district court found it lacked jurisdiction over the defendants and therefore could not adjudicate the matters in controversy. It nevertheless issued the injunction to allow the parties to appeal the *in personam* jurisdiction question. Ten days after the lawsuit in Louisiana had commenced, a public interest group, which was not a party in the Louisiana proceedings, filed suit in the United States District Court for the District of Columbia seeking disclosure of the same reports at issue in the Louisiana proceedings.

The plaintiffs in the second action emphasized that the Louisiana court had expressly found that it lacked *in personam* jurisdiction, and thus the second court should proceed to adjudicate the controversy. The District of Columbia court dismissed the latter lawsuit, emphasizing:

This Court must, in the interest of comity, defer to the judgment of its sister court [in Louisiana which entered the injunction]. To do otherwise, would be tantamount to having this Court sit as an appellate court, reviewing the decision of another trial court. The collateral attack on the judgment in Louisiana which the plaintiffs attempt here is totally inappropriate ....

When a court is confronted with an action that would involve it in a serious interference with or usurpation of this continuing power "considerations of comity and orderly administration of justice demand that the nonrendering court should decline jurisdiction."

*Id.* at 1253, 1254 (quoting *Mann Manufacturing, Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir.1971)).

*Accord Bergh v. State of Washington*, 535 F.2d 505, 507 (9th Cir.), *cert. denied*, 429 U.S. 921, 97 S.Ct. 318, 50 L.Ed.2d 288 (1976), where the Court stated:

When an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and such injunction should be granted only in the most unusual cases .... In such cases "[t]he

proper exercise of restraint in the name of comity keeps to a minimum the conflicts between courts administering the same law, conserves judicial time and expense and has a salutary effect upon the prompt and efficient administration of justice." [11]

535 F.2d at 507.

Thus, this Court, even though it has jurisdiction over this action, by the dictates of comity should withhold its hand so as not to review, enjoin, or otherwise interfere with the Wyoming District Court—a court of coordinate jurisdiction—which has been involved in the general subject-matter of this action for at least seven years.

### B. *Relief To Be Granted*

Since this Court has determined not to interfere with the jurisdiction and outstanding injunction of the Wyoming Court, it must now decide whether to dismiss the case, transfer it to the Wyoming Court, or stay its disposition pending action by the FERC as requested by Husky. Upon consideration of all the circumstances, this Court concludes that the most practical, reasonable and logical action to take is to order the transfer of this action to the Wyoming District Court pursuant to 28 U.S.C. § 1404.

■ A civil action may be transferred under § 1404(a) to another district "where it might have been brought," if the Court in its discretion, finds the transfer to be "[f]or the convenience of the parties and witnesses, [and] in the interest of justice."

The Court finds, and indeed it is not disputed, that this action could have been brought in the Wyoming District Court because jurisdiction [12] and venue [13] exist in that court.

With respect to the convenience of the parties and witnesses, this Court appears to afford no greater convenience than the Wyoming District Court. The record indicates that Husky and the DOE have already been in litigation on the general subject matter of this case for some seven years and while Exxon has not intervened and was denied the status of *amicus curiae* in the Wyoming action, nevertheless, counsel for Exxon did appear in that action and spoke to the issues before that court on July 18, 1983. (D.I. 14, Ex. A.) In fact, no argument has been advanced that one district is more convenient than the other. At least, these factors of convenience to the parties and witnesses are in equipoise. Turning now to the paramount factor of "interest of justice," the Court is convinced that this factor tips the scales in favor of transfer. As the discussion above demonstrates, this Court should not interfere with the jurisdiction and outstanding injunction of the Wyoming Court. That court which has had the general subject matter in litigation for years should determine all the specific issues raised here and in the Wyoming Court in order to eliminate possible inconsistent results. Comity dictates a transfer of this case in view of the unique background of the Wyoming litiga-

**11.** *See also Goins v. Bethlehem,* 657 F.2d 62, 64 (4th Cir.1981), *cert. denied,* 455 U.S. 940, 102 S.Ct. 1431, 71 L.Ed.2d 650 (1982) (affirming dismissal of suit challenging decree in proceedings in which plaintiffs had not been parties because "doctrine of comity forbade ... attempt to 'appeal from one district judge to another' "); *Zambrana v. Califano,* 651 F.2d 842, 844 (2d Cir.1981) ("Generally, principles of comity and judicial economy make courts reluctant to exercise jurisdiction over claims involving the orders of coordinate courts.") *Tate v. Werner,* 68 F.R.D. 513, 520 (E.D.Pa.1975) (dismissed action "where any relief in this court would possibly conflict with, and at least would circumscribe, the flexibility of any relief determination [in the other case]"); *Gregory-Portland Independent*

*School District v. Texas Education Agency,* 576 F.2d 81, 82 (5th Cir.1978), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1423, 59 L.Ed.2d 634 (1979) ("district court should defer jurisdiction to another district court if the integrity of the court's continuing injunction jurisdiction is compromised.").

**12.** Jurisdiction would exist under 15 U.S.C. § 754(a)(1), incorporating by reference 12 U.S.C. § 1904 note; 42 U.S.C. § 6393(b); 42 U.S.C. § 7192; 5 U.S.C. §§ 702 & 706; 28 U.S.C. §§ 1331, 1337, 1361.

**13.** Venue would be proper under 28 U.S.C. § 1391(c) and (e)(1). Husky's principal executive office is located in Cody, Wyoming.

tion; it is completely inappropriate for Exxon's action to remain in this Court.

Exxon argues that the issues raised in this Court are completely separate and distinct than those before the earlier Wyoming case. The Court finds this argument to be frivolous. It is clear from the record before this Court if the Wyoming District Court eventually rules that its prior ruling and that of TECA prohibit DOE from requiring Husky to purchase *any* entitlements, Exxon's claim here that Husky should be required to purchase *additional* entitlements above the $26 million as presently proposed will be completely precluded. Two different courts should not be judging separate parts of the whole interrelated dispute.

 Finally, DOE, while taking no position on Husky's present motion, suggests that "Judge Brimmer [who has presided in the Wyoming litigation from its beginning] could not adjudicate the instant case brought by Exxon challenging OHA's grant of exception relief to Husky, since he owns stock in Exxon." (D.I. 19 at 3.) This situation, if it is still accurate, does not prevent transfer to the Wyoming District Court. The United States District Court for the District of Wyoming, not any specifically named judge, has continuing jurisdiction over the litigation and outstanding injunction pending there. Individual judges presiding in litigation come and go for various and sundry reasons but, unless Congress eliminates the Wyoming District Court, it remains. No disability attaches to the Wyoming Court even if Judge Brimmer is disqualified to act. If Judge Brimmer could not sit, and no other judge appointed to that Court is available, there is a statutory method for designating a judge to handle the litigation. 28 U.S.C. § 292.

The Court concludes that this action should be transferred to the Wyoming District Court and an order shall be so entered.[14]

---

**14.** In view of the Court's disposition of this case on the grounds of comity, it is unnecessary to

address the two other independent grounds advanced by Husky in support of its motion.