802 F.2d 722
 105 Lab.Cas. P 34,854, 6 Fed.R.Serv.3d 43
 Homer FELLER, d/b/a Mount Levels Orchards and Farms, Appellee,
v.
William E. BROCK, Secretary of Labor, United States
Department of Labor; William J. Haltigan, Regional
Administrator for Employment and Training of the United
States Department of Labor; Edwin Meese, Attorney General
of the United States; Lyle Karne, District Director of the
Immigration and Naturalization Service of the United States
Department of Justice, Appellants.
TRI-COUNTY GROWERS, INC.; John Cushwa; Douglas Dirting;
Lloyd Lutman; William Kilmer; Richard W.
Blizzard; Richard Lowman; Charles
Lewis; Turner Ramey, Appellees,
v.
William E. BROCK, Secretary of Labor, United States
Department of Labor; William J. Haltigan, Regional
Administrator for Employment and Training of the United
States Department of Labor; Edwin Meese, Attorney General
of the United States; Lyle Karne, District Director of the
Immigration and Naturalization Service of the United States
Department of Justice, Appellants.
Homer FELLER, d/b/a Mount Levels Orchards and Farms, Appellee,
v.
William E. BROCK, Secretary of Labor, United States
Department of Labor; William J. Haltigan, Regional
Administrator for Employment and Training of the United
States Department of Labor; Edwin Meese, Attorney General
of the United States; Lyle Karne, District Director of the
Immigration and Naturalization Service of the United States
Department of Justice, Defendants,
and
Lucius Donaldson; Sammie Mackey; Neville Davey; Rebecca
Brown; Errol Brown; James Vassell, Appellants.
TRI-COUNTY GROWERS, INC., John Cushwa; Douglas Dirting;
Lloyd Lutman; William Kilmer; Richard W.
Blizzard; Richard Lowman;
Charles Lewis; Turner Ramey, Appellees,
v.
William E. BROCK, Secretary of Labor, United States
Department of Labor; William J. Haltigan, Regional
Administrator for Employment and Training of the United
States Department of Labor; Edwin Meese, Attorney General
of the United States; Lyle Karne, District Director of the
Immigration and Naturalization Service of the United States
Department of Justice, Defendants,
and
Lucius Donaldson; Sammie Mackey; Neville Davey; Rebecca
Brown; Errol Brown; James Vassell, Appellants.
 Nos. 85-1912(L), 85-1949, 85-2275, and 85-2276.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 8, 1986.
Decided Oct. 2, 1986.
 
 Marc Richman, U.S. Dept. of Justice, Civ. Div., and Garry G. Geffert, W.Va. Services Plan, Inc. (Richard K. Willard, Asst. Atty. Gen., William A. Kolibash, U.S. Atty., William Kanter, Civ. Div., Dept. of Justice, on brief) for appellants.
 Clarence E. Martin, III and Susan R. Snowden (Martin & Seibert, on brief) for appellees.
 Before ERVIN, and WILKINSON, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 ERVIN, Circuit Judge:
 
 
 1
 This appeal challenges the propriety of a preliminary injunction issued by a West Virginia federal district court which directly conflicts with a permanent injunction issued by a federal district court in the District of Columbia.[1] Because the West Virginia preliminary injunction reversed the status quo ante litem, forced the defendants to risk contempt in either West Virginia or the District of Columbia, and undermined the public interest in the orderly administration of justice, we hereby vacate it. We also reverse the district court's refusal to permit intervention as of right by a plaintiff in the District of Columbia action and by several other individuals who will be affected by the outcome of this litigation.
 
 I.
 
 2
 This case arises out of a dispute about the piece rate which must be paid to West Virginia apple pickers under the Department of Labor's (DOL) temporary foreign worker program. See 20 C.F.R. Secs. 655.0-655.212 (1985). This issue has been litigated at length in federal courts in the District of Columbia. Although the plaintiffs in the case at bar, Tri-County Growers (Tri-County) and Mount Levels Orchards and Farms (Mount Levels), were not parties to the District of Columbia litigation, those proceedings are integrally related to the problems currently confronting this court.
 
 
 3
 Under the temporary foreign worker program, American agricultural employers may receive certification to employ non-immigrant aliens temporarily when there are insufficient American workers to meet the employer's needs. The program is frequently used for short-term, labor-intensive tasks such as harvesting. One primary constraint on the foreign worker program is that the foreign workers cannot adversely affect the wages and working conditions of similarly employed United States workers. This policy is enforced in part through the adverse effect rate (AER), an hourly wage which must be paid to both aliens and domestic workers in order for an employer to receive certification. For enterprises such as apple growing, in which workers are paid not by the hour but by the amount of fruit they pick, the AER is converted into a regional piece rate.
 
 
 4
 In 1982, the Jefferson County, West Virginia branch of the NAACP and several named plaintiffs, including applicant for intervention Lucius Donaldson, sued DOL in District of Columbia district court. See NAACP, Jefferson County Branch v. Donovan, 558 F.Supp. 218 (D.D.C.1982) (NAACP I). The NAACP alleged that DOL was certifying use of alien workers by West Virginia apple growers who were paying piece rates based on improper productivity levels. The result was that foreign and domestic apple pickers did not earn the AER. DOL attempted to join Tri-County and Mount Levels, the growers[2] identified in the NAACP I allegations, as indispensable parties under Fed.R.Civ.P. 19(b). Tri-County and Mount Levels were not joined, and they chose not to intervene. NAACP I concluded with an injunction prohibiting DOL from certifying growers who did not pay a sufficiently high piece rate at a given productivity level.
 
 
 5
 DOL did not appeal NAACP I. However, its compliance with the spirit, and possibly the letter, of the NAACP I injunction was less than complete. In 1983, the NAACP, Donaldson, and others, representing a national class of workers, sued DOL in District of Columbia district court to obtain, inter alia, a raise in West Virginia's AER and concomitant piece rate. See NAACP, Jefferson County Branch v. Donovan, 566 F.Supp. 1202 (D.D.C.1983) (NAACP II). Once again, no growers were parties to the action. NAACP II concluded with an injunction prohibiting DOL from certifying any grower who failed to adjust its piece rate to permit an employee working at a set productivity rate to earn the current AER.
 
 
 6
 Instead of appealing NAACP II, DOL promulgated a completely new piece rate regulation. In the guise of enforcing its injunctions, the District of Columbia district court overturned the new regulation. The Court of Appeals for the District of Columbia Circuit vacated the district court order, holding that the court's power to supervise its injunctions did not extend to barring a new administrative scheme. The circuit court did not suggest, however, that the NAACP I and II injunctions were invalid in relation to the previous administrative scheme. See NAACP, Jefferson County Branch v. Donovan, 737 F.2d 67 (D.C.Cir.1984).
 
 
 7
 The NAACP then filed yet another suit, challenging the new regulation as arbitrary and capricious. Again, the growers were not parties to the suit. The District Court for the District of Columbia upheld the new regulation, but the District of Columbia Circuit Court struck it down because DOL failed to provide a reasoned explanation for the new scheme. See NAACP, Jefferson County Branch v. Donovan, 765 F.2d 1178 (D.C.Cir.1985). On remand, the District of Columbia district court declared the new regulation "to be of no force and effect" and reinstated the previous piece rate regulation "as interpreted by this Court" in NAACP I and NAACP II.
 
 
 8
 In late summer 1985, Tri-County and Mount Levels applied for certification to hire foreign apple pickers. These growers did not intend to pay the higher piece rate determined by applying the NAACP II formula. Believing it was bound by the injunction in NAACP II because the piece rate regulation litigated in that case had been reinstated, DOL refused certification.
 
 
 9
 Tri-County and Mount Levels then filed the instant lawsuit in West Virginia district court, claiming that the piece rates set by NAACP II are wrong and are inapplicable because they were not parties to that litigation. They also claimed that DOL's refusal of certification was arbitrary, capricious, and an abuse of discretion. With the apple harvest season fast approaching, the West Virginia district court issued a preliminary injunction prohibiting DOL from refusing certification on the basis of the NAACP II piece rate. The district court ordered Tri-County and Mount Levels to pay foreign workers a lower piece rate and to escrow the difference between that rate and the rate set by NAACP II.[3]
 
 
 10
 In accordance with the West Virginia injunction, DOL certified Tri-County and Mount Levels. The NAACP and its co-plaintiffs then brought a contempt action in District of Columbia district court because certification in compliance with the West Virginia preliminary injunction violated the injunction in NAACP II. The District of Columbia district court held that DOL was in fact violating its outstanding injunction. See NAACP, Jefferson County Branch v. Brock, 619 F.Supp. 846, 849-50 (D.D.C.1985). However, because DOL had made good faith efforts to comply with the District of Columbia order, it was not held in contempt. Id. at 850-51.
 
 
 11
 In addition to raising the contempt problem, Lucius Donaldson, a plaintiff in NAACP I and II, moved to intervene in the West Virginia litigation. Five domestic apple pickers in West Virginia who worked for growers other than Tri-County and Mount Levels and one West Virginia picker who worked for a grower affiliated with Tri-County also moved to intervene. The West Virginia district court denied the motion for intervention as a matter of right, reasoning that DOL could adequately represent the intervenors' interests.
 
 
 12
 The denial of intervention and the propriety of the preliminary injunction are before this court on appeal.
 
 II.
 
 13
 As a threshold matter, the growers contend that no binding, conflicting injunction exists in the District of Columbia. This argument is without merit.
 
 
 14
 First, the growers argue that the District of Columbia district court order reinstating the piece rates as interpreted in NAACP I and II superseded all previous injunctions in this controversy. Because this order did not explicitly contain an injunction against certification, the growers contend that no injunction currently binds DOL. Under Fed.Rule Civ.P. 65(d), an injunction cannot be issued merely by reference to another document.
 
 
 15
 The fundamental flaw in the growers' reasoning is that the NAACP II injunction did not have to be reinstated because it had never been vacated. Although some of the district court orders were reversed or vacated on appeal, the District of Columbia Circuit Court limited its action to specific parts of the district court's relief. See, e.g., NAACP, Jefferson County Branch v. Donovan, 737 F.2d 67, 73 (D.C.Cir.1984) (vacating only the district court's action dealing with the new piece rate regulation). The NAACP II injunction was not overturned.
 
 
 16
 Furthermore, the district court never indicated that the NAACP II injunction was superseded by its later orders in the case.[4] In fact, the District of Columbia district court's contempt opinion clearly states that the NAACP II injunction is currently binding. See Brock, 619 F.Supp. at 849. This assessment is shared by all parties to the District of Columbia action, including DOL. In this collateral attack, we will accept the issuing court's reasonable interpretation of the status of its orders. Cf. Colt Industries Operating Corp. v. Index-Werke K.G., 739 F.2d 622, 623 (Fed.Cir.1984) (refusal to clarify arguable ambiguity in an injunction issued by a sister circuit).
 
 
 17
 Second, the growers argue that the West Virginia injunction does not conflict with the District of Columbia injunction. The growers contend that the District of Columbia injunction requires only that the apple pickers "earn" the AER, NAACP II, 566 F.Supp. at 1210, not that they receive these earnings as current wages. Under this interpretation, payment into escrow does not violate NAACP II.
 
 
 18
 We find this exercise in semantics unconvincing. The District of Columbia injunction clearly contemplates prompt payment of earnings to the apple pickers. Furthermore, the District of Columbia considers the West Virginia injunction "irreconcilable" with its own. Brock, 619 F.Supp. at 851. We agree with this evaluation of the conflict between the two injunctions.
 
 
 19
 Third, the growers argue that because they were indispensable parties in the District of Columbia litigation, the NAACP II injunction is not binding on them. See Fed.R.Civ.P. 65(d) (injunction cannot bind a non-party). The flaw in this argument is that the NAACP II injunction technically binds only DOL, which was a party to the District of Columbia action. The growers' alleged indispensability impacts their current ability to attack the NAACP I and II injunctions collaterally. It does not force this court to ignore the existence of the NAACP II injunction.
 
 
 20
 In conclusion, our analysis of the facts indicates that when the instant action was filed, DOL was under a binding, final injunction in the District of Columbia not to certify growers such as plaintiffs. DOL's action with respect to Tri-County and Mount Levels comported with that order.
 
 III.
 
 21
 Our inquiry now turns to whether, faced with a binding conflicting injunction in the District of Columbia, the West Virginia district court should have issued its preliminary injunction. We conclude that issuance of the preliminary injunction was an abuse of discretion. See Blackwelder Furniture Co. v. Seilig Manufacturing Co., 550 F.2d 189, 193 (4th Cir.1977) (abuse of discretion standard of review).
 
 
 22
 The foundational principle for preliminary relief is that "it is a sound idea to maintain the status quo ante litem, provided that it can be done without imposing too excessive an interim burden upon the defendant." Id. at 195. See also Federal Leasing, Inc. v. Underwriters at Lloyd's, 650 F.2d 495, 499 (4th Cir.1981). This circuit has adopted a multi-factor, "balance-of-hardship" test for evaluating the propriety of preliminary injunction relief. Under that test:
 
 
 23
 The two more important factors are those of probable irreparable injury to plaintiff without a decree and of likely harm to the defendant with a decree. If that balance is struck in favor of plaintiff, it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success. Always, of course, the public interest should be considered.
 
 
 24
 Blackwelder, 550 F.2d at 196.
 
 
 25
 Applying three concerns mentioned in Blackwelder, we hold that issuance of the preliminary injunction was an abuse of discretion. First, we note that the preliminary injunction did not serve the normal purpose of preserving the status quo. In the late summer of 1985, the status quo was defined by the injunction in NAACP II, which became relevant upon vacation of the new piece rate regulation. The West Virginia district court reversed the status quo by ordering certification of foreign workers at piece rates less than those required by law, as interpreted in the District of Columbia.
 
 
 26
 Second, the balance between the hardships on the growers and DOL clearly favors DOL. In the absence of an injunction, plaintiff growers had two options: (1) to use only domestic labor to pick their fruit or (2) to pay the piece rate as defined by NAACP II, obtain certification, and attempt to recoup the wages from workers if the rate paid was in fact too high. The growers contend that it was impossible to pick their fruit using only domestic workers and that the probability of receiving wage refunds from overpaid pickers is slight. Even if these two contentions are correct, the hardship on plaintiffs from denial of an injunction is wholly financial.
 
 
 27
 Counterbalancing this measurable financial harm is the hardship on DOL, which implicates basic principles of judicial obedience and cannot be valued in monetary terms. See Blackwelder, 550 F.2d at 189 (incalculability of harm is factor in the balancing test). The West Virginia district court required DOL to choose between coordinate courts and to knowingly violate an outstanding court order. The morale and credibility problems caused by such action are obvious. Furthermore, the district court forced DOL to run a serious risk of contempt sanctions,[5] including immediate governmental payment of the escrowed wage differential. See Brock, 619 F.Supp. at 848-49.
 
 
 28
 Third, and most important, issuance of the preliminary injunction did a grave disservice to the public interest in the orderly administration of justice. Prudence requires that whenever possible, coordinate courts should avoid issuing conflicting orders. See generally Treadaway v. Academy of Motion Picture Arts, 783 F.2d 1418, 1421 (9th Cir.1986); Goins v. Bethlehem Steel Corp., 657 F.2d 62, 64 (4th Cir.1981); Brittingham v. United States Commissioner of Internal Revenue, 451 F.2d 315, 318 (5th Cir.1971).
 
 
 29
 This concern is often labelled one of "comity," although that doctrine technically applies only when two suits involving identical parties and issues are currently pending in separate forums. See Great Northern Ry. Co. v. National Railroad Adjustment Board, 422 F.2d 1187, 1193 (7th Cir.1970). Use of the "comity" label is somewhat misleading in this case because the growers were not parties to the District of Columbia proceedings and because the litigation there has ended, although the district court's supervisory power over its injunction continues. See System Federation No. 91, Railway Employees' Department v. Wright, 364 U.S. 642, 646-47, 81 S.Ct. 368, 370-71, 5 L.Ed.2d 349 (1961). Nevertheless, whatever its label, there is an underlying policy of judicial administration which counsels against the creation of conflicts such as the one at bar. See Brock, 619 F.Supp. at 852-53. See also Great Northern, 422 F.2d at 1194 (policies underlying comity doctrine). Because both the public interest and the balance of hardships militate against issuance of the preliminary injunction, we hereby vacate it.
 
 IV.
 
 30
 Our concern for the orderly administration of justice necessarily impacts the treatment of this case on remand. Because the facts have not been developed fully, we have chosen not to decide the extent to which the orderly administration of justice or preclusion principles[6] circumscribe further action by the West Virginia district court. Nevertheless, we offer the following guidelines to the district court on remand.
 
 
 31
 The Supreme Court has chosen not to discuss the constraints on a district court in situations similar to the instant one. See GTE Sylvania Inc. v. Consumers Union, 445 U.S. 375, 387 n. 11, 100 S.Ct. 1194, 1202 n. 11, 63 L.Ed.2d 467 (1980). Several appellate courts have stated that discretion requires a district court to decline to hear a claim seeking relief from a judgment entered by a coordinate court, at least when it is apparent that the parties can seek redress in the issuing court. See Lapin v. Shulton Inc., 333 F.2d 169, 172 (9th Cir.), cert. denied, 379 U.S. 904, 85 S.Ct. 193, 13 L.Ed.2d 177 (1964). See also Mann Manufacturing, Inc. v. Hortex Inc., 439 F.2d 403, 408 & n. 5 (5th Cir.1971) (quoting Lapin); Treadaway v. Academy of Motion Picture Arts, 783 F.2d 1418 (9th Cir.1986) (quoting Lapin); Carter v. Attorney General of the United States, 782 F.2d 138, 142 n. 4 (10th Cir.1986) (quoting Lapin).
 
 
 32
 In Lapin, the party seeking relief from an injunction in a coordinate court had been a party to the proceeding in which the injunction was originally issued. The Lapin principle has been expanded, however, to cases in which the plaintiff in the second action was neither a party nor the successor-in-interest of a party in the first action. See, e.g., Goins, 657 F.2d 62, Brittingham, 451 F.2d at 316-17; Exxon Corp. v. United States Department of Energy, 594 F.Supp. 84, 89-90 (D.Del.1984); Common Cause v. Judicial Ethics Committee, 473 F.Supp. 1251, 1253 (D.D.C.1979).
 
 
 33
 In Goins, 657 F.2d 62, this circuit upheld the dismissal of a collateral attack on a consent decree issued in the Northern District of Alabama. The Goins plaintiffs, similar to the growers in the case at bar, insisted that the Alabama decree should be nullified because they were necessary parties who were not joined. Id. at 64. We held the proper procedure would be for plaintiffs to file a motion in the Northern District of Alabama or to appeal to the Fifth Circuit. Id. at 64. Accord Martini v. Republic Steel Corp., 532 F.2d 1079 (6th Cir.), cert. denied, 429 U.S. 927, 97 S.Ct. 331, 50 L.Ed.2d 296 (1976). On remand, the West Virginia district court is advised to consider the applicability of Goins to the case at bar.[7]
 
 V.
 
 34
 Finally, we reach the district court's denial of intervention as of right.[8] At the outset, we note that liberal intervention is desirable to dispose of as much of a controversy "involving as many apparently concerned persons as is compatible with efficiency and due process." Nuesse v. Camp, 385 F.2d 694, 700 (D.C.Cir.1967). If the growers, pickers, and DOL had all been present in the NAACP I and II litigation, this case would not be before us. We have no intention of fostering in this litigation the identical problem of absent interested parties which plagues the District of Columbia's disposition.
 
 
 35
 In Newport News Shipbuilding and Drydock Co. v. Peninsula Shipbuilders' Association, 646 F.2d 117 (4th Cir.1981), we listed the following requirements for intervention as of right.
 
 
 36
 To intervene as a matter of right under Fed.R.Civ.P. 24(a)(2), the moving party must show that (1) it has an interest in the subject matter of the action, (2) disposition of the action may practically impair or impede the movant's ability to protect that interest, and (3) that interest is not adequately represented by the existing parties.
 
 
 37
 Id. at 120. Application of this test to the intervenor-appellants indicates that denial of intervention as of right was reversible error.
 
 
 38
 The intervenors must be separated into three groups for the purpose of interest analysis. James Vassell, a domestic worker employed in 1985 by a Tri-County member grower, presents the first type of interest. Vassell's wages were directly affected by the court-ordered certification of Tri-County to receive foreign workers to pick apples alongside him. His earnings were contingent upon the AER, which must be paid to both foreign and domestic pickers.[9] Like the foreign pickers, Vassell has an interest in an escrow account containing the difference between the wages he actually received and the wages required under NAACP II.
 
 
 39
 The apple pickers working for other West Virginia growers present a second type of interest in this case. Their wages were and are substantially contingent upon the availability of foreign workers to pick for growers in their state. If foreign workers had been unavailable, or available only at a higher piece rate, the wages of competing domestic pickers would have been higher in 1985. Moreover, to the extent that this litigation impacts the AER which will be paid in the 1986 harvest season, the interest of competing domestic pickers is clear. See Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 135-36, 87 S.Ct. 932, 936-37, 17 L.Ed.2d 814 (1967) (impact on competition is sufficient interest for intervention).
 
 
 40
 Lucius Donaldson has a third type of interest in this case. At its heart, this litigation is a collateral attack on NAACP I and II, to which Donaldson was a party. In Newport News, 646 F.2d at 121, this court recognized that an interest in preventing conflicting orders may be sufficient for intervention as of right.
 
 
 41
 Practical impairment of each intervenor's interest is also apparent. The wages of Vassell and the other West Virginia pickers were lower in 1985 and will be lower in the future if the growers prevail. Donaldson's interest in preserving the national scope of the NAACP II injunction will be undermined if the growers receive their requested relief. Finally, the stare decisis effect on this West Virginia litigation will substantially impair the ability of domestic pickers to rely on the AER set by NAACP II with respect to other growers and future harvests. See Newport News, 646 F.2d at 121; Francis v. Chamber of Commerce, 481 F.2d 192, 195 n. 8 (4th Cir.1973).
 
 
 42
 Participation by the intervenors as amicus curiae is not sufficient to protect against these practical impairments. Amicus participants are not able to make motions or to appeal the final judgment in the case. See Newport News, 646 F.2d at 121-22. Accordingly, the "practical impairment" requirement for intervention is satisfied.
 
 
 43
 The last requirement for intervention as of right, inadequate representation by existing parties, is also satisfied. The West Virginia district court claimed that this prerequisite was not satisfied because DOL could adequately represent intervenors' interests. This conclusion is untenable, in light of DOL's admission at oral argument that on the merits, it agrees with the growers. DOL has made clear its intention to argue against the District of Columbia's interpretation of the piece rate regulations, an interpretation preferred by intervenors. Furthermore, DOL has refused to argue that the growers are precluded from bringing this action because of their failure to intervene in the District of Columbia. See supra note 6. Only the intervenors have drawn the court's attention to this line of authority. Finally, even if DOL agreed with the pickers on the merits, the government's position is defined by the public interest, as well as the interests of a particular group of citizens. See Trbovich v. United Mine Workers, 404 U.S. 528, 538-39, 92 S.Ct. 630, 636-37, 30 L.Ed.2d 686 (1972). Thus, the nature of DOL and its conduct in this litigation to date indicate that DOL cannot adequately represent the interests of intervenors. Intervention as of right, therefore, should be permitted.
 
 VI.
 
 44
 In summary, we decide today that the West Virginia district court's preliminary injunction directly conflicts with an outstanding injunction against DOL issued in the District of Columbia. Under the circumstances of this case, the grant of conflicting preliminary relief was an abuse of discretion. The West Virginia preliminary injunction is hereby vacated, and the West Virginia district court is instructed to supervise immediate distribution of the funds escrowed pursuant to this injunction.
 
 
 45
 For the reasons discussed above, we also hold that the intervenor-appellants have interests which may be practically impaired by disposition of this action. DOL does not adequately represent those interests. Consequently, intervenor-appellants are hereby admitted as parties-defendant.
 
 
 46
 VACATED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 This appeal from a preliminary injunction was taken pursuant to 28 U.S.C. Sec. 1292(a)(1)
 
 
 [2]
 In fact, Tri-County is not in the business of growing apples. It is a corporation which supplies apple pickers to its shareholders, who are apple growers. For ease of reference in this opinion, the term "growers" includes Tri-County unless otherwise specified
 
 
 [3]
 This preliminary injunction and escrow applies only to the 1985 picking season, which has now passed. This appeal is not moot, however, because the preliminary injunction is the only legal bar to the workers' immediate receipt of escrowed funds. Furthermore, this annual pre-harvest dispute, which was raised in our circuit in 1984 and 1985, is a classic example of a problem "capable of repetition, yet evading review." Weinstein v. Bradford, 423 U.S. 147, 148-49, 96 S.Ct. 347, 348-49, 46 L.Ed.2d 350 (1975)
 
 
 [4]
 The growers base their contention of supersession on the fact that the most recent relevant order is labeled "Final Judgment and Order." Although a final judgment ordinarily supersedes previous preliminary injunctions in the case, see Madison Square Garden Boxing, Inc. v. Shavers, 562 F.2d 141, 144 (2d Cir.1977), the NAACP I and II injunctions were final, not preliminary relief. The rules dealing with supersession of preliminary injunctions are, therefore, irrelevant to the status of the outstanding orders in this case
 
 
 [5]
 The fact that no sanctions were imposed does not render this concern meaningless. The District of Columbia district court's contempt decision was not preordained. In fact, the District of Columbia district court has made clear that the mere existence of a conflicting injunction in another court does not immunize DOL from future contempt sanctions. Brock, 619 F.Supp. at 850-51 n. 5
 
 
 [6]
 The intervenors argue that the growers should be precluded from mounting any collateral attacks on NAACP I and II in any forum because the growers knew of the District of Columbia litigation and chose not to intervene. In Provident Tradesmens Bank v. Patterson, 390 U.S. 102, 114, 88 S.Ct. 733, 740, 19 L.Ed.2d 936 (1968), the Supreme Court noted, but did not evaluate, the possible argument that a nonparty who "purposefully bypassed an adequate opportunity to intervene" should be precluded from a later collateral attack. In National Wildlife Federation v. Gorsuch, 744 F.2d 963, 969 (3d Cir.1984), the Third Circuit used this reasoning to bar a plaintiff that had failed to appeal the denial of its motion for intervention from collaterally attacking the consent judgment which ultimately issued in the case
 This "new and tentative" preclusion concept, 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure, Sec. 4452 at 439 (1981), undercuts traditional notions that "due process accords a person a day in court" and that "a stranger to a lawsuit is not under a duty to intervene." Gorsuch, 744 F.2d at 969. Accordingly, at this time and on the facts currently before this court, we refuse to apply this principle to the growers' action.
 
 
 [7]
 As an alternative to Goins-type dismissal, the district court might consider the possibility of transferring this case to the District of Columbia under 28 U.S.C. Sec. 1404(a). If the other prerequisites for transfer are met, the "interest of justice," particularly the avoidance of conflict between coordinate courts, may make the District of Columbia a more appropriate forum for this action. See Exxon Corp. v. United States Department of Energy, 594 F.Supp. 84, 91 (D.Del.1984) (Exxon's attack on the Department of Energy's treatment of Husky Oil, which was governed by an outstanding injunction in Wyoming district court, transferred from Delaware to Wyoming). Cf. Ellicott Machine Corp. v. Modern Welding Co. Inc., 502 F.2d 178, 180-82 (4th Cir.1974) (change of venue appropriate to serve interests of comity)
 Although a motion by one of the parties is ordinarily required for transfer, the district court may consider the possibility of transfer sua sponte. If the matter is raised sua sponte, the parties deserve an opportunity to be heard before a decision is rendered. See 15 C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure Sec. 3844 at 329-30 (1986).
 
 
 [8]
 Intervenors moved in the alternative for permissive intervention under Fed.R.Civ.P. 24(b)(2). The district court failed even to address the possibility of permissive intervention. Because of our disposition of the denial of intervention as of right, however, we do not reach either the abuse of discretion in failing to consider a proffered alternative ground for decision or the merits of permissive intervention
 
 
 [9]
 For purposes of 1985 labor certification, Tri-County has stipulated that it is to be treated as a joint employer with its member growers. Accordingly, the AER applies both to the foreign workers employed by Tri-County and to the domestic workers employed by Tri-County's member growers