**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-1331**

JLS, INCORPORATED,

                Plaintiff - Appellee,

        v.

PUBLIC SERVICE COMMISSION OF WEST VIRGINIA,

                Defendant,

        and

DUNCAN'S MOTEL, INCORPORATED; WILLIAMS TRANSPORT,

                Movants,

        and

C & H COMPANY; CIMARRON COACH OF VIRGINIA, INCORPORATED; D &
L LIMOUSINE, INCORPORATED; TAXI LEASING, LIMITED; TAXI
SERVICE, INCORPORATED, d/b/a Yellow Cab,

                Movants – Appellants.

**No. 08-1338**

JLS, INCORPORATED,

                Plaintiff - Appellee,

        v.

PUBLIC SERVICE COMMISSION OF WEST VIRGINIA,

                Defendant,

and

C & H COMPANY; CIMARRON COACH OF VIRGINIA, INCORPORATED; D & L LIMOUSINE, INCORPORATED; TAXI LEASING, LIMITED; TAXI SERVICE, INCORPORATED, d/b/a Yellow Cab,

Movants,

and

DUNCAN'S MOTEL, INCORPORATED; WILLIAMS TRANSPORT,

Movants – Appellants.

Appeals from the United States District Court for the Southern District of West Virginia, at Charleston.  Joseph R. Goodwin, Chief District Judge.  (2:07-cv-00586)

Argued:  January 28, 2009                    Decided:  March 20, 2009

Before TRAXLER, DUNCAN, and AGEE, Circuit Judges.

Reversed and remanded by unpublished per curiam opinion.

**ARGUED:** James David Kauffelt, KAUFFELT & KAUFFELT, Charleston, West Virginia, for Appellants.  Jeremy Kahn, KAHN AND KAHN, Washington, D.C., for Appellee.  **ON BRIEF:** Michael W. Carey, S. Benjamin Bryant, CAREY, SCOTT, DOUGLAS, P.L.L.C., Charleston, West Virginia, for Appellants Williams Transport and Duncan's Motel, Incorporated.  Robert R. Rodecker, LAW OFFICES OF ROBERT R. RODECKER, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

2

PER CURIAM:

In this suit, a motor passenger carrier seeks injunctive relief and a declaration that its transportation of railroad employee train crew members in motor vehicles to and from different points along railroad lines constitutes interstate transportation even when the moves are wholly within West Virginia. Several companies now appeal the denial of their motions to intervene as defendants. We reverse and remand.

I.

The plaintiff, JLS, Inc., is a motor passenger carrier registered with the Federal Motor Carrier Safety Administration. JLS is in the business of transporting railroad crew members in motor vehicles to and from different points along railroad lines, and JLS holds a federal permit authorizing the making of such trips in interstate commerce.

Counsel for JLS sent a letter in July 2007 to the Director of Transportation of the West Virginia Public Service Commission ("PSC") asserting that its transportation of crew members to and from points within West Virginia constituted interstate commerce that was subject only to federal regulation. The letter stated that JLS planned to proceed on that assumption. Counsel subsequently telephoned a PSC staff attorney, who allegedly advised counsel that JLS would need a permit from PSC in order

3

to transport rail crew members within West Virginia. JLS then filed this action on September 19, 2007, against the West Virginia Public Service Commission ("PSC"), seeking an order from the district court declaring that its proposed activities—moves wholly within West Virginia—constitute interstate transportation and therefore are subject only to federal, not state, regulation. The suit also requests an injunction prohibiting PSC from attempting to take "any enforcement action" regarding such activities. J.A. 24.

JLS moved for summary judgment on October 19, one month before PSC's answer was due. In support of the motion, JLS filed an affidavit of its president, W. Scott Boyes ("the Boyes Affidavit"). Pursuant to local rules, PSC's response to JLS's summary judgment motion was due on November 2. That date being more than two weeks before PSC's answer was due, the district court extended PSC's deadline for responding to the summary judgment motion to December 3.

PSC filed its answer on November 19. The next day, C&H Company; D&L Limousine, Inc.; Cimarron Coach of Virginia, Inc; Taxi Service, Inc., doing business as Yellow Cab; and Taxi Leasing, Ltd., all moved to intervene. Two more companies, Williams Transport and Duncan's Motel, Inc., later filed a separate motion to intervene one month later. We will refer to all seven companies collectively as "Movants."

4

Movants represent that they are engaged in activities similar to JLS, including wholly intrastate transportation of passengers, and that they hold intrastate authority granted by PSC. Each alleges that it is entitled to intervene as a matter of right because it has an interest in the transaction that is the subject of the action, PSC cannot adequately represent its interest, and denial of its intervention request may impair or impede its ability to protect its interest.

The interest that Movants claim is an economic one. They maintain that if JLS obtains the relief it is seeking, JLS and other similarly situated companies will not be subject to PSC rules and requirements and will therefore be better able to compete for railroad crew transportation business within West Virginia. Each Movant asserts that the intrastate transportation of railroad crews represents a significant part of their total business. They further represent that their knowledge of the railroad crew transportation business exceeds PSC's and that no one from PSC has ever visited them or inquired about how such crews are transported. They assert that PSC could not adequately represent and defend their interests in this suit because of PSC's lack of knowledge and because the Movants' revenue and interest in the continued employment of its workers gives them a much greater incentive to litigate the suit vigorously.

5

On November 29, the original five Movants filed a motion requesting that the deadline for responding to JLS's summary judgment motion be moved to after the completion of discovery ("the Motion to Enlarge Time"). The motion alternatively sought denial of the summary judgment motion without prejudice pending discovery or denial of summary judgment on the merits. Movants' memorandum in support of the motion cited specific conflicts between their affidavits and the Boyes Affidavit on several material points and argued that discovery was needed on these points. Then, on December 3, PSC filed its response to JLS's summary judgment motion. PSC did not file any affidavit contradicting any fact alleged by JLS or an affidavit stating that further discovery was needed. Instead, it relied on two of the affidavits Movants had filed. PSC and the five original Movants thereafter filed separate motions to dismiss with supporting memoranda.

On February 11, the district court denied all seven Movants' motions to intervene and denied as moot the original Movants' other outstanding motions. The court ruled that even if the Movants will face greater competition for rail crew transportation business if JLS obtains the relief it seeks, their interest in avoiding such competition is not sufficiently direct to justify intervention as a matter of right. The district court also ruled that because PSC apparently shared the

6

Movants' ultimate goal of characterizing JLS's action as intrastate and supporting PSC's jurisdiction, a presumption arose that their interests were adequately represented, so that Movants were required to show "adversity of interest, collusion, or nonfeasance."  J.A. 350 (internal quotation marks omitted). The court stated that Movants had not alleged collusion or nonfeasance, and because the court had "already determined that [Movants] do not possess an adequate interest, any effort to determine whether [Movants] have demonstrated interests that are adverse would be academic."  J.A. 350.  The court further concluded that the superiority of Movants' knowledge about rail crew transportation would be immaterial to the success of JLS's suit.

## II.

Movants argue that the district court abused its discretion in denying their motions to intervene.  See Virginia v. Westinghouse Elec. Corp., 542 F.2d 214, 216 (4th Cir. 1976) (stating standard of review).  We agree.

Rule 24(a)(2), pertaining to intervention as a matter of right, provides that

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

7

Rule 24 does not specify what type of interest a party must have to intervene as a matter of right, but the Supreme Court has recognized that "'[w]hat is obviously meant . . . is a significantly protectable interest.'" Teague v. Bakker, 931 F.2d 259, 261 (4th Cir. 1991) (quoting Donaldson v. United States, 400 U.S. 517, 531 (1971)). When the party on whose side a movant seeks to intervene is pursuing the same result that the movant is urging, a presumption arises that the movant's interest is adequately represented, so that the movant must show "adversity of interest, collusion, or nonfeasance." Westinghouse Elec. Corp., 542 F.2d at 216. However, the movant need not show that the representation by existing parties will definitely be inadequate in this regard. See Trbovich v. UMWA, 404 U.S. 528, 538 n.10 (1972). Rather, he need only demonstrate "that representation of his interest 'may be' inadequate." Id. For this reason, the Supreme Court has described the applicant's burden on this matter as "'minimal.'" Teague, 931 F.2d at 262 (quoting Trbovich, 404 U.S. at 538 n.10).

Feller v. Brock, 802 F.2d 722 (4th Cir. 1986), demonstrates that Movants' interest is adequate here. In Feller, this court reversed the denial of a request to intervene as defendants made by individual apple pickers in a case in which apple growers were plaintiffs and the United States Department of Labor ("DOL") was the defendant. The suit concerned the growers'

8

rights to be issued temporary foreign worker certifications on the basis of a wage litigated in a previous action. There were three groups of pickers seeking to intervene, one of which was composed of domestic pickers for West Virginia growers who were not plaintiffs in the suit. We held that this group of pickers had an interest in the suit sufficient to support intervention as a matter of right because the wages of the competing domestic workers would be expected to increase to the extent that the litigation resulted in foreign workers being unavailable or available only at a higher wage. See Feller, 802 F.2d at 730.

Here, the interest that Movants seek to protect is very similar to that in Feller. Although Movants have no property rights at stake, the result of this suit will determine the level of competition that Movants will have, and hence, the amount of income they can expect to earn. All Movants derive substantial revenue from transporting railroad crews under their PSC authority. If JLS is awarded the relief it seeks, Movants would face competition from an entity—perhaps multiple entities in the future—that does not have to do what they have done— obtain authority from PSC—and which is not subject to PSC's orders, rules, and regulations. In contrast, according to JLS itself, the hurdles that it will face if it is subject to PSC's authority would be enormous; indeed, it would be "virtually impossible for JLS to obtain PSC intrastate authority to provide

9

rail-crew service." J.A. 38. Seeing no rationale for distinguishing Feller, we conclude that Movants' interest is adequate as a matter of law. See also Utahns for Better Transp. v. United States Dep't of Transp., 295 F.3d 1111, 1115 (10th Cir. 2002) (holding that transportation association could intervene as a matter of right on the side of the Department of Transportation in a suit about a regional transportation plan because "[t]he threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest").

JLS does not dispute that this interest would be impaired if JLS obtained the relief it sought. We therefore turn to the issue of the adequacy of PSC's representation of Movants' interest.

Movants have not alleged a conflict of interest or collusion on the part of PSC. Rather, they allege nonfeasance. They maintain that because of PSC's relative lack of knowledge of rail crew transportation and because it lacks the motivation that Movants have to defeat JLS, PSC has not litigated and will not litigate this action sufficiently vigorously and effectively to protect their interest. We conclude that Movants clearly satisfied their "minimal" burden of showing that PSC's representation of their interests "may be inadequate" in this regard. Trbovich, 404 U.S. at 538 n.10 (internal quotation

10

marks omitted); cf. Teague, 931 F.2d at 262 (holding that district court erred in finding adequate representation when would-be intervenors' superior financial resources created "a significant chance that they might be [more] vigorous" in their defense of the action than the named defendants).

Initially, we note that even when a governmental agency's interests appear aligned with those of a particular private group at a particular moment in time, "the government's position is defined by the public interest, [not simply] the interests of a particular group of citizens." Feller, 802 F.2d at 730; see In re Sierra Club, 945 F.2d 776, 780 (4th Cir. 1991). Movants point out that if Movants' intervention is denied, PSC could settle this case in a manner that could harm Movants' interests.

Moreover, in this case, Movants have leveled more effective challenges than has PSC to the facts JLS has conceded are material to its case. For example, JLS has represented that it is seeking to enter into contracts to provide rail crew transportation to Norfolk Southern and CSX Railroads in West Virginia. JLS concedes that its assertion that "NS and CSX trains move between points in different states" is a fact material to its case. J.A. 215-A. However, Movant Yellow Cab's Jamie Marlowe counters in his affidavit that, in his experience, "entirely intrastate train moves are not rare, but are common, and may be a majority of those conducted by" Yellow Cab. J.A.

11

He also states that about 75% of railroad crew trips conducted by Yellow Cab were transportation of local crews, meaning a trip beginning at a train station or motel in West Virginia and ending at a train in West Virginia, or the reverse, without leaving the state. This is supported by several other of Movants' affidavits.

JLS also concedes that it is material that Norfolk Southern and CSX "won't enter into contract[s] with JLS if JLS can't provide complete service, including transportation within West Virginia." J.A. 215A. Movants have argued that the Boyes Affidavit is not sufficient by itself to establish the positions of these two railroad companies and urge that further discovery is needed to establish that point. They also challenge JLS's assumption that JLS could not provide complete service to these railroads without obtaining the relief it seeks in this case. Several Movants' affidavits stated that there was at least one company that provided rail crew transportation to and from points within West Virginia without having received operating authority from PSC. Movants further allege that a few days prior to the district court's opinion one Movant received a proposed contract from Norfolk Southern explicitly allowing for the subcontracting of transportation to other entities, suggesting that JLS could subcontract the transportation duties at issue in this case. These factual challenges support

12

Movants' claims that their superior knowledge of railroad crew transportation and their greater incentive to defeat JLS gives them a significant advantage over PSC in their ability to litigate this case.

Movants have also advanced some significant legal points that PSC did not present. For example, in its memorandum supporting its summary judgment motion, JLS relied on a decision of the Pennsylvania Public Utility Commission ("the PPUC"), In re Renzenberger, Inc., 98 Pa. P.U.C. 87 (Feb. 7, 2003), as factually "indistinguishable" from the present case. J.A. 113. In its responding memorandum, PSC acknowledged JLS's citation of the case but failed to distinguish it. In contrast, in their reply to JLS's opposition to their motion to intervene, the original Movants pointed out that the PPUC had substantially modified that decision, limiting it to covering crews that "have just entered Pennsylvania from another state and are going to temporary housing or they will be traveling from temporary housing to leave Pennsylvania and travel to another state." In re Renzenberger, Inc., 2003 WL 21263616 (Pa. P.U.C. May 5, 2003). This modification is especially important in light of Movants' affidavits stating that as many as 75% of all railroad trips performed by Movants do not involve crews from out of state or do not cross a state line.

Furthermore, in their memorandum supporting their motion to dismiss, the original Movants cited to Public Service Commission of Utah v. Wycoff Co., 344 U.S. 237 (1952), a case not identified by PSC. Wycoff concerned facts nearly identical to those of the present case. There, the plaintiff sought injunctive relief as well as a declaratory judgment against the Utah Public Service Commission stating that its transportation of motion picture film and newsreels between points within Utah constituted interstate, not intrastate, commerce. The Court held that the plaintiff could not be entitled to injunctive relief as there was "no proof of any threatened or probable act of the defendants which might cause the irreparable injury essential to equitable relief by injunction." Id. at 241. As for declaratory relief, the Court noted that the Declaratory Judgment Act does not confer absolute rights to litigants to receive declaratory orders, but rather confers discretion on the courts to award such relief. See id. The Court held that, under the particular facts before it, declaratory relief should not be awarded. See id. at 245. In so ruling, the Court relied on the fact that the Utah PSC had not taken any concrete action against the declaratory judgment plaintiff. See id. at 245-46. The Court noted that characterizing plaintiff's transportation as intrastate or interstate would be premature since, if the Utah PSC ever were to undertake regulation of the plaintiff, the

14

relevant facts might have changed by that time. See id. at 246. The Court also reasoned that issuing a declaratory judgment before the Utah PSC took concrete action would be incompatible with a proper federal-state relationship because it would essentially preempt the initial right of the state to reduce its policies into a concrete order as might happen if that process were not short-circuited. See id. at 247. The Court also stated that it was "doubtful" that it had federal-question jurisdiction since the federal right asserted would only be a defense to a threatened action. Id. at 248. The Court chose not to decide that jurisdictional issue, however, since it had determined that the case should be dismissed on the grounds already discussed. See id. at 248-49.

JLS contends that Wycoff is of little relevance here because it has been overruled to the extent that it suggested (in dictum) there was no case or controversy before the Court. See Aroostook Band of Micmacs v. Ryan, 404 F.3d 48, 60 (1st Cir. 2005). Regardless of the jurisdictional import of Wycoff, however, Movants' citation of the case is still clearly a significant contribution as it may very well prevent JLS from obtaining the relief it seeks.

For these reasons, Movants have convincingly shown that their litigation of this suit has been, and would be, significantly more vigorous and effective than PSC's. Having

15

noted the difficulty for a government entity in adequately representing the interests of a private group, see Feller, 802 F.2d at 730, we conclude that Movants clearly met their "minimal" burden of showing that PSC's representation of their interest "may be inadequate." Trbovich, 404 U.S. at 538 n.10 (internal quotation marks omitted). We therefore reverse the denial of Movants' motions to intervene.

## III.

Movants next argue that the district court erred in denying as moot—due to the denial of their motions to intervene—the Motion to Enlarge Time. Because we reverse the denial of Movants' motions to intervene, we will allow the district court to consider the Motion to Enlarge Time in the first instance on remand.

## IV.

In sum, we reverse the denial of Movants' motion to intervene and we remand to the district court for further proceedings.

REVERSED AND REMANDED