**Holly Kirby LILLARD, Plaintiff;**

**Jerry L. Smith, William M. Barker, and Penny J. White, Intervening Plaintiffs,**

**v.**

**Charles W. BURSON, in his capacity as Attorney General and Reporter for the State of Tennessee; Brook Thompson, in his capacity as Coordinator of the Division of Elections, Office of the Secretary of State of Tennessee; Riley Darnell, in his capacity as Secretary of State for the State of Tennessee; and the Tennessee Judicial Evaluation Commission, Defendants.**

**No. 96–2721 D/V.**

United States District Court,
W.D. Tennessee,
Western Division.

July 12, 1996.

## ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER

DONALD, District Judge.

Before the Court is the motion of Holly Kirby Lillard, plaintiff, (and intervening plaintiffs) seeking a Temporary Restraining Order to enjoin the defendants from placing her name on the August 1, 1996 election ballot in any manner other than a "yes or no" retention vote; or alternatively, that 1) the election for judicial officers in plaintiff's posi-

tion be postponed until the November 5, 1996 election; 2) a judicial evaluation be ordered for plaintiff in time to allow plaintiff to run "yes or no"; 3) an extension of plaintiff's term of office to November 5, 1996. The court heard oral argument on the motion on July 12, 1996, and entered relief orally on the record, with the written memorandum to be filed subsequently.

Subsequent to the hearing on the plaintiff's motion, the court received motions to intervene on behalf of Jerry L. Smith and William M. Barker, intermediate appellate court judges, and Penny J. White, Associate Supreme Court Justice. The intervening plaintiffs sought relief pursuant to Fed.R.Civ.P. 24 to ensure uniformity in the conduct of the August Tennessee elections for appellate court judges. For good cause shown, the motions under Rule 24 were granted. The court heard argument on the motions for injunctive relief as to the intervening plaintiffs. For reasons described herein, the motions for Temporary Restraining Orders are granted and the defendants are ordered to place the names of the plaintiffs, Holly Kirby Lillard, Jerry L. Smith, William M. Barker, and Penny J. White on the August 1 ballot with a "yes or no" retention designation.

The plaintiffs, Holly Kirby Lillard, Jerry L. Smith, William M. Barker, and Penny J. White are all residents of the State of Tennessee, and serve as judges or justices on the various appellate courts in the State of Tennessee.[1] The term of each of the plaintiffs expires on August 31, 1996, in that each was appointed during an interim term. The defendants, all duly appointed officials of the State of Tennessee, include: Charles W. Burson, Attorney General and Reporter; Brook Thompson, Coordinator of the Division of Elections; Riley Darnell, Secretary of State, and the Tennessee Judicial Evaluations Commission, chaired by Judge Connie Clark.

The complaint alleges that at the time of plaintiffs' appointment as judge, the process and procedures for the selection of appellate judges in the State of Tennessee were controlled by Tenn.Code Ann. § 17–4–101, *et. seq.*, a newly established statutory scheme of judicial selection popularly known as the "Tennessee Plan." Prior to the adoption of the Tennessee Plan in 1994, the Tennessee election laws provided for the election of judges on Tennessee's Courts of Appeal by the method known as the "Missouri Plan," in which incumbent judges were permitted to run unopposed on a "yes or no" retention ballot.

Under the Tennessee Plan, a Judicial Evaluations Commission was created, which was required to conduct evaluations of the performance of certain judges. If a judge received a positive evaluation, the Commission would recommend retention of the judge, and the candidate would be entitled to have his or her name submitted on the ballot, unopposed in a retention election. Such ballots would merely read: "Shall (name of candidate) be elected and retained in office ... Yes or No ...". Tenn.Code Ann. 17–4–114, 17–4–115 (1994).

Plaintiff Lillard argues that this statutory scheme imposes an affirmative duty on the Judicial Evaluation Commission to conduct an evaluation of her performance. However, though she made several requests for such an evaluation, the Commission members unanimously took the position that the judicial evaluation program established by the statute applies only to appellate court judges who seek to serve a complete, eight-year term. Since the next complete term runs from September 1, 1998 through August 31, 2006, and Judge Lillard therefore would be running for a partial term, her requests for an evaluation were denied. The Evaluation Commission appears to have taken the position that "any action in furtherance of speeding up an abbreviated and unapproved election process would in fact undermine the goals, objectives, and overall integrity of the program." Commission Memo, May 13, 1996.

---

1. Holly Kirby Lillard is an appellate court judge in the Western Section of Tennessee; Jerry L. Smith is a judge on the Tennessee Court of Criminal Appeals in the Middle Section; William M. Barker is a judge on the Tennessee Court of Criminal Appeals for the Eastern Section; and Penny J. White is an associate justice of the Tennessee Supreme Court, and is a resident of Johnson City Tennessee.

Plaintiff contends that both the Commission and defendant Thompson, as Coordinator of the Division of Elections, expressly assured her that though she was not evaluated, her name would appear on the ballot for an uncontested "yes or no" vote. The rationale for the decision appears to have been an interpretation of the statute that the requirement for judicial evaluations did not apply to those judges standing for election during the August 1996 mid-term elections, as those judges would automatically appear on the ballot as retention candidates with a "yes or no" ballot designation.

On May 16, 1996, plaintiff submitted her declaration of candidacy to the defendant, Brook Thompson in his official capacity as Coordinator of the Division of Elections, Office of the Secretary for the State of Tennessee, at which time she avers that she was assured that her name would be placed on the ballot with a "yes or no" retention designation. Subsequent thereto, as a result of a ruling by a special Tennessee Supreme Court, that Associate Supreme Court Justice Penny J. White was not eligible to run on a "yes or no" retention election,[2] for the position of Associate Supreme Court Justice, the defendants sought to apply the ruling to plaintiff and notified plaintiff that her name would be placed on the ballot without the "yes or no" designation and that a qualified candidate could be placed on the ballot in opposition to her candidacy.

Notwithstanding all of the above-referenced events, and despite the May 16 certification of a "yes or no" vote, defendant Thompson, as Coordinator of Elections and on the advice of defendant Burson, allegedly

determined that the plaintiff would be required to stand for a contested election, and that the deadline for filing opposing qualification petitions was July 12, 1996.

Plaintiff therefore alleges that defendant's actions in refusing to allow her an evaluation and in placing her in a contested election constitutes a denial of her right to run in an uncontested election, and denied her the right to due process without having afforded her the opportunity to be heard or to contest the validity of their actions. Plaintiff(s) avers that defendants have denied her substantive and procedural due process rights, equal protection rights, and her ensuing rights under 42 U.S.C. § 1983.

Plaintiff avers that irreparable harm will ensue if she is not accorded relief.

### STANDARD FOR INJUNCTIVE RELIEF

■ Injunctive relief is extraordinary relief, and should only be entered when there is a threat of immediate and irreparable injury and no other adequate remedy is available. Fed.R.Civ.P. 65. In considering granting injunctive, the court must strictly construe Fed.R.Civ.P. 65. A court should only issue injunctive relief after considering:

1) Whether the party seeking relief has shown a strong likelihood of success on the merits;

2) Whether irreparable harm will result without relief;

3) Whether, after balancing the interests of the moving party, the risks of harm is greater if relief is not entered; and finally,

2. II. THE SPECIAL SUPREME COURT RULING

Recently, state election officials refused to allow the filing of petitions to have names placed on the ballot in opposition to Tennessee Supreme Court Justice Penny J. White. Mr. Lewis Laska and Mr. John J. Hooker filed suit in the Chancery Court of Davidson County to challenge the refusal. The issues in those cases were whether Justice White must receive a favorable evaluation from the Judicial Election Commission to be able to run on a "yes/no" ballot, and whether Mr. Laska and Mr. Hooker should have the right to qualify to oppose Justice White. The court held that the Judicial Evaluation statute did apply to Justice White, and that because she had not

obtained a favorable recommendation as required by statute, that she must run on a contested ballot. This was apparently the first time that any authoritative entity in Tennessee had taken the position that the evaluation statute applied to interim appellate justices such as Justice White and Judge Lillard. Notably, Judge Lillard was apparently not allowed to participate.

Following a request for clarification form current defendant and Attorney General Charles Burson, the Tennessee Supreme Court issued an order noting that its ruling was expressly limited to the cases before it, thereby controlling the situation only of Justice Penny White, and that its prior orders did not apply to the seats on the intermediate appellate courts.

4) Whether the public interest is advanced by the injunction.

*Thomas By and Through Thomas v. Davidson Academy*, 846 F.Supp. 611, 616 (M.D.Tenn.1994).

## DISCUSSION

■ The existence of dual judicial systems in the United States—state courts and federal courts—imposes certain restraints upon the conduct of the federal judiciary. When state action is challenged by persons who ask the federal courts to intervene in state matters, the United States Supreme Court has cautioned restraint based on notions of comity and respect for state law. Corwin, THE CONSTITUTION OF THE UNITED STATES OF AMERICA: ANALYSIS AND INTERPRETATION, (1953). Comity is "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

■ The concept [of comity] does not mean blind deference to "States' Rights" any more than it means centralization of control over every important issue in our National Government and its courts.... What the concept does represent is a system in which there is sensitivity to the legitimate interest of both state and national governments, and in which the national government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the states. *Id.*, quoting Justice Hugo Black.

Thus, at the outset, this court recognizes, as countenanced by the defendants, that this issue is at the heart of federalism and a state's right to regulate and control its election processes. This court does not seek to traverse that very important right, but only to protect the narrow federal right asserted by the plaintiffs in this cause.

## THE FEDERAL RIGHT TO BE PROTECTED

■ Plaintiff has brought this action under Section 1983 alleging that the defendants have violated plaintiff's right to substantive and procedural due process and equal protection under the laws, as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States. Two jurisdictional elements must be present for an action alleging deprivation of Civil Rights under that Section 1983. First, there must be a showing of state action, and second there must be a showing that the defendants have deprived the plaintiff of some right, privilege or immunity secured by the Constitution or laws of the United States. *See, Dallam v. Cumberland Valley School District, et al.* 391 F.Supp. 358 (M.D.Pa.1975). Concededly, the element of state action is satisfied, as all of the defendants, officials of the State of Tennessee were acting in their official capacities.

■ The Fourteenth Amendment applies only to state action. *United States v. Cruikshank*, 92 U.S. 542, 23 L.Ed. 588 (1875). The Fourteenth Amendment forbids the state from depriving any person of life, liberty, or property without due process of law. *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113. Protected interests in property are normally not created by the Constitution. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). *Bush v. Johnson*, 607 F.Supp. 96 (E.D.Tenn.1985) Rather, they are created and their dimensions are defined by an independent source such as state statutes or rules entitling citizens to certain benefits. *Id.* That is:

Certain attributes of 'property' interests protected by procedural due process emerge from these decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in

their daily lives, reliance that must not be arbitrarily undermined. *Roth,* at 577, 92 S.Ct. at 2709.

■ Prior to the effective date for implementation of the Tennessee Plan, Tennessee statutes gave incumbent appellate judges the right to run unopposed on a "yes or no" retention ballot. The right to due process is conferred not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest ..., it may not constitutionally authorize the deprivation of such an interest, once conferred. *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Similarly, having chosen to extend this right of retention election to persons in plaintiff's class, Tennessee may not withdraw that right absent fundamentally fair procedures. *Dallam v. Cumberland Valley School District, supra; See also, Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985).

■ The court finds that, based on *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the expectation to run on a "yes or no" ballot is a cognizable property right conferred by Tennessee law. Specifically, in the instant case, Tennessee Code Annotated 17–4–114 created that right, which the plaintiff could reasonably expect to be constitutionally protected. Once plaintiff duly filed their qualifying petitions, defendants assured them that they would be placed on the ballot on a "yes or no" retention. Plaintiffs and defendants understood that the plaintiffs would be placed on the ballot for a "yes or no" retention. A legitimate claim of entitlement can arise from mutually explicit understanding. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

The law has long recognized that once a constitutional or federal right has been recognized, the weight of the right is irrelevant for purposes of triggering due process safeguards. *Dallam v. Cumberland, supra.* Rather, the nature of the right is the relevant consideration. Thus, having afforded appellate judges the statutory entitlement to run for retention, the statute's provisions created a property right in the expectation to run on a "yes or no" retention ballot without the imprimatur of an evaluation until the statutory requirements of the Tennessee Plan could be implemented.

■ It is a fundamental tenet of statutory construction that unless there is some ambiguity in the language of the statute, it must be strictly construed so as to effectuate the intent of the drafters. Tenn.Code Ann. 17–4–114 provides in relevant part:

(b) If the declaration of candidacy is timely filed, only the name of the candidate, without party designation, shall be submitted to the electorate in Tennessee in the regular August election. Each county election commission of the state shall cause the following to be placed on the ballot:

Shall (Name of Candidate) be elected and retained in office as (Name of Office)? Yes ... or No ....? Tenn.Code Ann. 17–4–114(a)(1).

The plaintiffs each qualified by the May 16, 1996 deadline and each was duly certified.

Subsection (c) provides:

Unless the judicial evaluation commission recommends the retention of a judge, the provisions of this act shall not be applicable. A political party may nominate a candidate and independent candidates may qualify under the general election law for the general election which shall be the regular August election. After a judge is elected under this subsection, the provisions of this chapter concerning the evaluation and retention process shall again apply. Tenn.Code Ann. § 17–4–115(c).

Notwithstanding the language of 17–4–114, Tenn.Code Ann. 17–4–201, provides that the commission shall publish, not more than 180 days before the qualifying deadline for the position, a report not to exceed 600 words in a daily newspaper of general circulation. Tenn.Code Ann. 17–4–201(c). No such report was published as to plaintiffs.

The statute at 17–4–201(e) provides:

The judicial evaluation program, including the public report and the ballot information, shall apply to each appellate court judge who seeks to serve a complete term after September 1, 1994.

Thus, the plain language of the statute exempts judges seeking interim term re-election from the strictures of Tenn.Code Ann. 17–4–114, since the entity established to perform the evaluations is not asked to commence its work until such time as appellate court judges seek a full term. Tenn.Code Ann. 17–4–201. Since plaintiffs are not seeking to serve complete eight-year terms, the requirement of judicial evaluation for purposes of running "yes or no" for retention are inapplicable. Because the actions of defendants in seeking to apply the provision of 17–4–115 to plaintiffs in derogation of their right to stand for retention election on a "yes or no" vote deprived them of the fundamental due process right of notice and a hearing, the court finds that there is a strong likelihood that plaintiffs will succeed on the merits.

■ Next, the court must examine whether there is a showing of irreparable harm. The court finds that plaintiffs will suffer irreparable harm if relief is not accorded. The loss of constitutional guarantees, even for a minimal period of time, unquestionably constitutes irreparable injuries for purposes of an injunction. *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

Next, the court must weigh the countervailing harms. Prior to July 5, 1996, the plaintiffs, the defendants, and the voters of Tennessee reasonably and foreseeably expected that plaintiffs' name would appear on the ballot for a "yes or no" retention election.

On July 5, 1996, the special Tennessee Supreme Court ruled:

> Under the provision of T.C.A. Section 17–4–114(c), the Tennessee Plan is not applicable unless the judicial evaluation commission recommends the retention of a judge. In the forthcoming judicial election, the judicial evaluation commission was not yet fully operational and, through no fault of Justice White, it did not act to recommend her retention as a Supreme Court Justice. Accordingly, the provision of the Tennessee Plan are not applicable to the election to be held on August 1, 1996, and under T.C.A. Section 17–4–114(c), a political party may nominate a candidate,

and independent candidates may qualify under the general election law for the general election which is the regular August election.

Prior to the July 12, hearing, before this court, absentee ballots were distributed on which plaintiffs' names appeared for "yes or no" retention election. At 8:00 a.m. on July 12, 1996, "early voting" commenced. The ballots presented to those voters omitted the names of plaintiffs, thus denying the voters an opportunity to vote for appellate court judges. Absent relief, yet a third ballot would be required to be printed and distributed listing plaintiffs' names in a contested election along with any declared opponents. Under such a circumstance, a confusing series of events would be created which would necessarily diminish ballot access and voter participation in the August 1, 1996 election. Certain voters would be denied their vote. Affording relief for plaintiffs would serve to enhance ballot access and voter participation, meet voters' expectation as to other processes of the election, promote uniformity, further the integrity of the process, and effectuate the language of the statute. Thus, the court finds that affording relief outweighs the harm that would enure to the state if relief is not ordered.

Finally, public policy is enhanced by ordering relief. The stated purposes and intent of the legislature in passing the subject statute are, inter alia, "to insulate the judges of the courts from political influence and pressure; ... to enhance the prestige of and respect for courts by eliminating the necessity of political activities by appellate judges and judges; and to make the courts 'nonpolitical.' " Tenn.Code Ann. 17–4–101(a). Maintaining the status quo for electing appellate court judges until the evaluation provisions of the Tennessee Plan can be implemented would further the public policy of insulating judges from political activity.

### CONCLUSION

Based on all the foregoing, the court finds that good cause has been shown for granting relief to the plaintiffs. Defendants are **ordered** to place plaintiffs' names on the Au-

gust 1, 1996 ballot for a "yes or no" retention vote. Requiring such action preserves the integrity of the process, avoids prejudice, protects plaintiff's property right, minimizes harm to the state, and meets the expectations both of candidates and voters, including those who have already cast absentee ballots and of those who will cast ballots, and most closely maintains and preserves the status quo. Therefore, the court grants plaintiff's motion for Temporary Restraining Order. This ruling is not intended to disturb the holding of the special Tennessee Supreme Court which held that the method of judicial selection under the Tennessee Plan does not violate the Tennessee Constitution.

In light of the court's order, it is not necessary to address the alternative prayers for relief at this time. A further hearing is set for **Tuesday, July 23, 1996, at 1:00 p.m., Courtroom No. 5** to determine whether a preliminary injunction should issue.

**IT IS SO ORDERED.**