**John Jay HOOKER**

v.

**Charles W. BURSON, et al.**

No. 3:96–0652.

United States District Court, M.D. Tennessee.

July 22, 1996.

1284

Robert Ladd Delaney, Nashville, for Plaintiff.

Andy Dwane Bennett, Nashville, for Defendants.

### MEMORANDUM

CAMPBELL, District Judge.

#### I. Introduction

This case, in the interest of justice, is hereby transferred to the United States District Court for the Western District of Tennessee, Memphis Division.

The transfer is necessary to avoid actual and potential conflicts between the United States District Courts in Tennessee over whether the elections for the Supreme Court and Court of Criminal Appeals should be contested or retention elections.

The parties in *Hooker v. Burson*, this case, and *Lillard v. Burson*, pending in the Western District, are litigating over the same issue. Mr. Hooker wants contested elections. The *Lillard* plaintiffs want retention elections. They cannot both prevail. The issue, therefore, should be decided before a single court to avoid possibly conflicting rulings between the United States District Courts.

The parties, as well as the voters and candidates in the elections for Supreme Court and Court of Criminal Appeals, are entitled to have the United States District

Courts in Tennessee speak with one voice on a single matter of great importance. The strong public interest in the orderly administration of justice and elections compels this result.

## II. History Of The Case

This case, along with related state and federal actions, has a unique history. An abbreviated chronology follows.

### 1. STATE COURT LITIGATION.

In May, 1996, Mr. Hooker filed an action in the Chancery Court for Davidson County, Tennessee, seeking to be placed on the ballot for the Supreme Court of Tennessee. Mr. Hooker contended, among other things, that the Supreme Court election had to be a contested election rather than a retention election. The Chancery Court denied the relief sought. (Complaint ¶¶ 38–41).

Mr. Hooker filed an appeal with the Tennessee Supreme Court, which was subsequently transferred to the Tennessee Court of Appeals in June, 1996. Mr. Hooker then filed a motion asking the Court of Appeals to recuse itself, which was denied, and thereafter, appealed to the Supreme Court. The Supreme Court recused itself. (Complaint ¶¶ 45–47).

On July 2, 1996, a Special Tennessee Supreme Court was appointed to hear Mr. Hooker's case and a consolidated case filed by Lewis Laska on the merits. (Complaint ¶¶ 47–48). *State of Tennessee, ex rel, John Jay Hooker v. Brook Thompson*, No. 01A01–9606–CH–00259 (Tenn.1996).

On July 5, 1996, the Special Tennessee Supreme Court held that Mr. Hooker could not run for the Supreme Court because he "failed to meet the requirements that a candidate be an attorney licensed to practice in Tennessee." (Complaint ¶ 49; Exhibit H). "Hooker's law license was suspended as a result of his failure to meet continuing legal education requirements." (Complaint, ¶ 5, Exhibit H).

The Special Tennessee Supreme Court also held that the August 1, 1996 election for Supreme Court must be a contested election, not a retention election, based solely on Tennessee law. At issue was a new "Tennessee Plan," Tenn.Code Ann. Sections 17–4–101, *et seq.*, for judicial selection. The Special Supreme Court held: "Accordingly, the provisions of the Tennessee Plan are not applicable to the election to be held on August 1, 1996, and under T.C.A. Section 17–4–114(c), a political party may nominate a candidate, and independent candidates may qualify under the general election law for the general election which is the regular August election." (Complaint ¶ 2, Exhibit H).

The Special Tennessee Supreme Court then ruled that incumbent Supreme Court Justice, Penny White,[1] could run in the contested election. "Justice White and all other similarly situated incumbent appellate judges who have declared their candidacy prior to May 16, 1996" were "deemed to have filed a qualifying petition for election to the offices which they currently held." (Complaint, Exhibit H). The Special Tennessee Supreme Court also held that the other plaintiff in the consolidated case, Lewis Laska, possibly could run in the contested election depending on his place of residence. Mr. Laska's case was remanded to the trial court to determine his residence. *Id.*

The Special Tennessee Supreme Court, the highest state court in Tennessee, thus had held that the election for Supreme Court must be a contested election based on Tennessee law. The Special Tennessee Supreme Court, at this point, also had held that Justice Penny White, and possibly Lewis Laska, were candidates for election. Mr. Hooker was not a qualified candidate for the Supreme Court.

On July 8, 1996, the Special Tennessee Supreme Court amended its prior Order and held that Mr. Laska did not meet the residence requirement for Supreme Court because he did not reside in the Eastern Grand Division of the State. The Order of remand to the trial court was vacated. (Complaint, Exhibit I). As a result, there was to be a contested election for Supreme Court for which only the incumbent, Penny White, was on the ballot.

---

1. Justice Penny White is a Defendant in this case.

On July 9, 1996, the Special Tennessee Supreme Court issued an Order allowing additional candidates to qualify to run for Supreme Court. The Order was in response to a filing by a putative candidate, John King. "We are persuaded that the August 1 election must be open to the candidates embraced in [Tenn.Code Ann. Section 17–4–114(c)], provided that they reside in the Eastern Grand Division." (Complaint, Exhibit J). The Court further held that potential candidates had until July 12, 1996—three days—at 4:00 p.m. to qualify. *Id.*

Meanwhile, early-voting in Tennessee was scheduled to commence on the morning of July 12, 1996, before the afternoon deadline for candidates to qualify to run for Supreme Court. Thus, the election for Supreme Court was set to begin before the candidates were known to the voters. Tenn.Code Ann. § 2–6–102.

On July 10, 1996, the Special Tennessee Supreme Court issued an Order clarifying its prior orders regarding the elections for the Court of Criminal Appeals and Court of Appeals. "No equitable relief granted in this Court's Orders of July 5, 8, and 9 shall apply to the intermediate appellate court judges, who are not parties to this action, and this Court's Order of July 5, 1996 ... is clarified by deleting the words 'and all other similarly situated incumbent appellate judges who have declared their candidacy prior to May 16, 1996.'" (Complaint, Exhibit K). Thus, the Special Tennessee Supreme Court held that it had not expressly ruled on the elections for Court of Criminal Appeals and Court of Appeals.

On July 11, 1996, the Defendant State Election Coordinator, Brook Thompson, is alleged to have announced in the newspaper that the elections for the intermediate appellate court judgeships would be contested elections, not retention elections, and that the qualifying deadline was extended to July 12, 1996 at 4:00 p.m., consistent with the then applicable Supreme Court election process. (Complaint, ¶ 55).

Mr. Hooker, Plaintiff, on July 11, 1996, attempted to obtain from the Defendant State Election Coordinator, Brook Thompson, a nominating petition to run for the Court of Criminal Appeals. Defendant Thompson refused to give Mr. Hooker a nominating petition for the Court of Criminal Appeals based on the reasoning of the Orders by the Special Tennessee Supreme Court that he was not qualified to run for judicial office. (Complaint, ¶ 59, Exhibit L).

The election litigation then moved to the United States District Courts.

## 2. FEDERAL COURT LITIGATION.

### A. *Lillard v. Burson.*

The federal court litigation begins[2] with a case filed by Holly Kirby Lillard, an incumbent Tennessee Court of Appeals Judge, in the United States District Court for the Western District of Tennessee. *Lillard v. Burson,* 933 F.Supp. 698 (W.D.Tenn.1996). At issue, initially, was whether the Court of Appeals election had to be a contested election or a retention election.

On July 12, 1996, the *Lillard* court issued a Temporary Restraining Order that required a retention election for the Court of Appeals on August 1, 1996. "The defendants are restrained from taking any action with respect to ... Holly Kirby Lillard for the ... Court of Appeals ... other than to place her name on the ballot ... ___yes ___no."

After the Temporary Restraining Order was issued in *Lillard,* Supreme Court Justice Penny White, and incumbent Court of Criminal Appeals Judges Jerry L. Smith and William M. Barker, successfully moved to intervene in the case and thus were included in the Order mandating retention elections. (Amended Complaint, Exhibit M).

Thus, the effect of the *Lillard* case was that the contested election for Supreme Court, ordered by the Special Tennessee Su-

---

2. Lewis Laska initially filed his litigation in the United States District Court for the Middle District of Tennessee on May 13, 1996. *Lewis Laska v. Brook Thompson,* 3:96–0441 (M.D.Tenn.1996). The *Laska* District Court declined to issue an injunction ordering state officials to give Mr. Laska a nominating petition for the Supreme Court elections based on abstention and other grounds.

preme Court on July 5, 1996, pursuant to Tennessee law (Complaint, Exhibit H) changed to a retention election. The *Lillard* court, for the first time, also required a retention election for the Court of Criminal Appeals. Mr. Hooker seeks election to both of these judicial offices.

The *Lillard* court set a hearing for July 23, 1996, to determine if the Temporary Restraining Order should be converted into a preliminary injunction.

The *Lillard* court, in its Temporary Restraining Order (Amended Complaint, Exhibit M) made the following rulings on Tennessee law pertinent to this case:

> The Court finds that, based on *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the expectation to run on a "yes or no" ballot is a cognizable property right conferred by Tennessee law. Specifically, in the instant case, Tennessee Code Annotated 17–4–114 created that right, which the plaintiff could reasonably expect to be constitutionally protected. Once plaintiff duly filed their qualifying petitions, defendants assured them that they would be placed on the ballot on a "yes or no" retention. Plaintiffs and defendants understood that the plaintiffs would be placed on the ballot for a "yes or no" retention. A legitimate claim of entitlement can arise from mutually explicit understanding. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) . . .
>
> . . . . Thus, having afforded appellate judges the statutory entitlement to run for retention, the statute's provisions created a property right in the expectation to run on a "yes or no" retention ballot without the imprimatur of an evaluation until the statutory requirements of the Tennessee Plan could be implemented.
>
> It is a fundamental tenet of statutory construction that unless there is some ambiguity in the language of the statute, it must be strictly construed so as to effectuate the intent of the drafters. Tenn.Code Ann. 17–4–114 provides in relevant part:
>
> > (b) If the declaration of candidacy is timely filed, only the name of the candidate, without party designation, shall be submitted to the electorate in Tennessee in the regular August election. Each county election commission of the state shall cause the following to be placed on the ballot.
> >
> > Shall (Name of Candidate) be elected and retained in office as (Name of Office)? Yes . . . or No. . . . ? Tenn.Code Ann. 17–4–114(a)(1).

The plaintiffs each qualified by the May 16, 1996 deadline and each was duly certified.

Subsection (c) provides:

> Unless the judicial evaluation commission recommends the retention of a judge, the provisions of this act shall not be applicable. A political party may nominate a candidate and independent candidates may qualify under the general election law for the general election which shall be the regular August election. After a judge is elected under this subsection, the provisions of this chapter concerning the evaluation and retention process shall again apply. Tenn. Code Ann. § 17–4–115(c).

Notwithstanding the language of 17–4–114, Tenn. Code Ann. 17–4–201, provides that the commission shall publish, not more than 180 days before the qualifying deadline for the position, a report not to exceed 600 words in a daily newspaper of general circulation. Tenn. Code Ann. 17–4–201(c). No such report was published as to plaintiffs.

The statute at 17–4–201(e) provides:

> The judicial evaluation program, including the public report and the ballot information, shall apply to each appellate court judge who seeks to serve a complete term after September 1, 1994.

Thus, the plain language of the statute exempts judges seeking interim term re-election from the strictures of Tenn.Code Ann. 17–4–114, since the entity established to perform the evaluations is not asked to commence its work until such time as appellate court judges seek a full term. Tenn.Code Ann. 17–4–201. Since plaintiffs are not seeking to serve complete eight-year terms, the requirement of judicial

evaluation for purposes of running "yes or no" for retention are inapplicable. Because the actions of defendants in seeking to apply the provision of 17–4–115 to plaintiffs in derogation of their right to stand for retention election on a "yes or no" vote deprived them of the fundamental due process right of notice and a hearing, the court finds that there is a strong likelihood that plaintiffs will succeed on the merits. (Amended Complaint, Exhibit M).

Mr. Hooker, Plaintiff, characterizes the *Lillard* ruling as a violation of federalism. Federalism is violated, according to Mr. Hooker, because the *Lillard* federal court refused to adhere to the interpretation of Tennessee law by the Special Tennessee Supreme Court. (Motion for Preliminary Injunction ¶ 2).

It should be noted that the holding of the Temporary Restraining Order is that the Plaintiff judges have a "property right" in retention elections which was allegedly violated by state officials. This, of course, is only a tentative finding regarding the probability of success on the merits of the case.

It should be remembered that the Special Tennessee Supreme Court had ruled only on the Supreme Court election and not the elections for Court of Appeals or Court of Criminal Appeals. (Complaint, Exhibit K). Also, under the law in effect prior to the Tennessee Plan, the Supreme Court ran in contested elections while the Court of Appeals and Court of Criminal Appeals ran in retention elections. *See generally* Tenn.Code Ann. § 17–4–101, et seq.

B. *Hooker v. Burson*—Original Complaint.

Meanwhile, back in the Middle District, on July 11, 1996, Mr. Hooker filed his original Complaint (Docket No. 1) in this Court. The Complaint requested a Temporary Restraining Order to hold the elections for Supreme Court and Court of Criminal Appeals on November 5, 1996, rather than August 1, 1996. This Court held a hearing on July 12, 1996, and denied the Motion For A Temporary Restraining Order from the bench. (Docket No. 8).

Mr. Hooker, in his original Complaint, asserted four counts. Count I and Count II are brought in his capacity as a candidate. Count III and Count IV are filed based on Mr. Hooker's status as a voter.

Count I of the Complaint alleges that Defendants Riley Darnell, Secretary of State, and Brook Thompson, Coordinator of Elections, have violated Plaintiff's First and Fourteenth Amendment rights by refusing to allow him to qualify as a candidate for the Supreme Court. More specifically, the Complaint alleges "a lesser restrictive alternative exists for enforcing the State's arguably legitimate interest in Continuing Legal Education; namely, requiring that all judges in Tennessee fully comply with this obligation before being sworn as a judge." (Original Complaint, ¶ 67).

Count II of the Complaint is the same as Count I except it relates to the Court of Criminal Appeals, rather than the Supreme Court.

Count III of the Complaint alleges that Defendants Riley Darnell, Secretary of State, and Brook Thompson, Coordinator of Elections, and the Defendant members of the Special Tennessee Supreme Court, William H.D. Fones, Martha S.L. Black, Lyn S. Howard, A.C. Wharton, Jr., and S. Morris Hadden, have "deprived the Plaintiff, Hooker and other citizens of Tennessee, of their federal constitutional right to a constitutionally and otherwise lawfully elected judiciary within the State of Tennessee." Count III cites no provision of the United States Constitution other than the Supremacy Clause.

Count IV of the Complaint alleges that Defendants Riley Darnell, Secretary of State, and Brook Thompson, Coordinator of Elections, and the Defendant members of the Special Tennessee Supreme Court, William H.D. Fones, Martha S.L. Black, Lyn S. Howard, A.C. Wharton, Jr., and S. Morris Hadden, "have deprived the Plaintiff, Hooker, and the citizens of the State of Tennessee of their First and Fourteenth Amendment rights under the United States Constitution and their right to present for election and vote for different candidates of their choice." (Original Complaint, ¶ 82).

Mr. Hooker seeks the following relief in the original Complaint:

A Temporary Restraining Order prohibiting the occurrence of an election for judge of the Tennessee Supreme Court and Tennessee Intermediate Appellate Court Judge in Tennessee until November, 1996. (Original Complaint at p. 30).

This Court declined to enjoin the August 1, 1996 elections because Mr. Hooker did not have a substantial likelihood of success on the merits of the original Complaint. (Docket No. 8).

In response to Count III, this Court also opined that it was bound by the Special Tennessee Supreme Court's interpretation of Tennessee law:

> Count III alleges an unspecified "federal constitutional right to a constitutionally and otherwise lawfully elected judiciary within the State of Tennessee."
>
> The Special Tennessee Supreme Court has decided under Tennessee law that Mr. Hooker does not qualify and, therefore, cannot be lawfully elected. This is a ruling by the highest court of Tennessee on a Tennessee law issue. "State rather than federal courts are the appropriate institutions to enforce state rules." *Pyles v. Raisor,* 60 F.3d 1211, 1216 (6th Cir.1995). This Court is bound by the Special Tennessee Supreme Court's interpretation of its own law.
>
> Thus, the only issue properly before this Court is whether the Tennessee law, as interpreted by the Special Tennessee Supreme Court, violates a federal right.

(Docket No. 8, p. 6).

### C. *Hooker v. Burson*—Amended Complaint.

On July 19, 1996, Mr. Hooker filed an Amended Complaint (Docket No. 9) in this case. The amendment does not change any of the four counts of the original Complaint.

Mr. Hooker brings the Amended Complaint in his capacity as a voter, not as a candidate, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201. (Amended Complaint, ¶ 85).

The Amended Complaint, generally, raises two new matters.

First, the Amended Complaint asserts that the Orders of the Special Tennessee Supreme Court, combined with the actions of Attorney General Burson and Elections Coordinator Thompson, Defendants, created a right to vote in contested elections which is protected by the First Amendment.

Second, the Amended Complaint alleges that Defendant General Burson has a conflict of interest and should be removed as a counsel in this case.

The Amended Complaint can be summarized as follows:

1. Alleged Right To Vote In Contested Elections.

The Amended Complaint alleges that the Special Tennessee Supreme Court, as the highest state court in Tennessee, has conclusively held as a matter of Tennessee law that there must be a contested election for the Supreme Court. (Amended Complaint, ¶¶ 92–93). This ruling by the Special Tennessee Supreme Court is also allegedly binding precedent on the Court of Criminal Appeals election which, therefore, must too have contested elections. (*Id.*) It is further alleged that all federal courts are bound by the Special Tennessee Supreme Court's interpretation of Tennessee law. (*Id.*)

The Amended Complaint then alleges that Defendants Charles W. Burson, Attorney General and Reporter, and Brook Thompson, State Election Coordinator, in response to the Orders of the Special Tennessee Supreme Court, properly extended the filing deadline for contested elections for the Court of Criminal Appeals to July 12, 1996. (Amended Complaint, ¶ 94).

Various individuals are alleged to have qualified as candidates for the Supreme Court and Court of Criminal Appeals by the extended July 12, 1996 deadline. (Amended Complaint, ¶¶ 90 and 94).

The Amended Complaint further alleges: "As a result of the actions and declarations by Defendants Burson and Thompson to extend the qualifying deadlines" for the Court of Criminal Appeals, and the "Special Tennessee Supreme Court's Orders," Plaintiff and other voters "had a legal right created by binding state law to vote" in contested

elections for the Supreme Court and Court of Criminal Appeals. (Amended Complaint, ¶ 95).

The Amended Complaint then alleges that "Defendant Burson and Thompson reversed themselves" on July 13, 1996, and are improperly holding retention elections in violation of Plaintiff's right to vote in contested elections. (Amended Complaint, ¶ 96). The Amended Complaint, at this point, fails to mention that Defendants Burson and Thompson are required by the *Lillard* court's injunction to hold retention elections.

Nevertheless, the Amended Complaint alleges:

> As a result, the acts of Defendants Burson and Thompson ... violate Plaintiff's constitutional rights as a voter for said judgeships as well as the rights of all other voters in the State of Tennessee to vote on properly qualified candidates for said judgeships pursuant to state law properly interpreted and established by the highest court of the State of Tennessee. Said constitutional rights of Plaintiff and other Tennessee voters which have been violated are protected by the First and Fourteenth Amendments of the United States Constitution.

(Amended Complaint, ¶ 96).

Plaintiff, in summary, seeks in the Amended Complaint to use those portions of the two District Court opinions that benefit him while disregarding their otherwise unfavorable content and holdings. Mr. Hooker claims a right to vote in a contested election for the judgeships by combining the "property right" recognized by the *Lillard* court with the deference to the Special Tennessee Supreme Court's interpretation of Tennessee law exercised by this Court. This is in the nature of legal alchemy.

2. Alleged Conflict Of Interest Of the Attorney General.

The Amended Complaint also alleges that Defendant Charles W. Burson, Attorney General and Reporter, has a conflict of interest and should be removed as counsel in this case. (Amended Complaint, ¶¶ 98–100).

It is alleged that because the Attorney General is appointed by the Tennessee Supreme Court that, therefore, General Burson "has a personal interest in the outcome of this case and all other litigation over said Special Tennessee Supreme Court's said Order." (Amended Complaint, ¶ 98).

The Amended Complaint implies that this alleged conflict has influenced Defendant Burson's decisions "not to enforce the rulings of said Special Tennessee Supreme Court" and to "not appeal" the *Lillard* case to the Sixth Circuit Court of Appeals. (Amended Complaint, ¶¶ 98–99).

The *Lillard* Order is alleged to be in error because it "reinterprets" Tennessee law established by the Special Tennessee Supreme Court and "conflicts" with this Court's opinion that it is bound by the Special Tennessee Supreme Court's interpretation of state law.

It should be noted that the alleged conflict of interest of Defendant General Burson is not a conflict with Mr. Hooker.

D. Motion For Preliminary Injunction

Pending before this Court for decision is Plaintiff's Motion For Preliminary Injunction (Docket No. 10) filed on July 19, 1996.

The Motion asserts four alleged grounds for injunctive relief:

1. Attorney General Charles W. Burson has a "conflict of interest" and should be removed as counsel for Defendants (Motion, ¶ 1);

2. The Orders of the Special Tennessee Supreme Court "conclusively establish" the "law of the State of Tennessee for the August 1, 1996 election" for the Supreme Court and Court of Criminal Appeals. "[N]o federal district court has the power or authority to reinterpret Tennessee state law pertaining to said elections." Therefore, the *Lillard* Court's Order in favor of retention elections was "erroneous." (Motion, ¶ 2);

3. Plaintiff and the voters of Tennessee have "protected rights" under Tennessee state law established by said Special Tennessee Supreme Court" to vote in "contested elections" for the Supreme Court and Court of Criminal Appeals. These "rights" are "protected by the First and Fourteenth

Amendments" to the Constitution. (Motion, ¶ 3); and

4. The failure of "Defendants Burson and Thompson" to place "candidates' names on the ballots for contested elections" for the disputed judgeships "violate Plaintiff's and similarly situated voters' said constitutional rights." (Motion, ¶ 40).

The Motion seeks two forms of injunctive relief. First, Plaintiff requests an injunction ordering Defendants to "place the names of properly qualified individuals" on the ballot for contested elections to the Supreme Court and Court of Criminal Appeals. Second, Plaintiff seeks an injunction "nullifying any early voting or absentee voting" that has been done pursuant to a retention election. (Motion, ¶¶ 5 and 6).

Alternatively, the Motion requests that the elections for Supreme Court and Court of Criminal Appeals "be postponed until November 5, 1996." (Motion, ¶ 7).

### III. Discussion

### 1. VENUE.

A United States District Court may transfer any civil action to any other district where it might have been brought if it is in the interest of justice. 28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

*Id.*

The United States District Court for the Western District of Tennessee has venue over this action pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1932(a).[3] This

case, therefore, is subject to transfer to the Western District if it is "in the interest of justice." [4]

### 2. IN THE INTEREST OF JUSTICE.

 It is well established that the interest of justice alone may dictate transferring an action to another federal District Court. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir.1986). One consideration in determining whether transfer is in the interest of justice is the desire to avoid multiplicity of litigation involving a single transaction:

> The federal courts have long recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal right—to exercise care to avoid interference with each other's affairs ... 'As between federal district courts, ... the general principle is to avoid duplicative litigation.' ... The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.

*West Gulf Maritime Assoc. v. ILA Deep Sea Local 24*, 751 F.2d 721, 728–29 (5th Cir.1985). To avoid these problems, the District Courts have traditionally dismissed, stayed or transferred actions where the issues presented could be resolved in an earlier-filed action pending in another District Court. *Id.* "In particular, 'a court may ... in its discretion dismiss a declaratory judgment or injunctive suit if the same issue is pending in litigation elsewhere.'" 751 F.2d at 729. *See also Boston and Maine Corp. v. United Transp. Union*, 110 F.R.D. 322 (D.Mass.1986).

 One of the principles underlying the doctrine of comity is the desire to avoid

---

3. 28 U.S.C. § 1391(b) provides: "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State ..."

28 U.S.C. § 1392(a) provides: "Any civil action, not of a local nature, against defendants residing in different districts in the same State, may be brought in any of such districts";

Defendants Burson, Thompson, and Darnell are Defendants in *Lillard.* Defendants Fones

and Wharton reside in the Western District. Defendants White, Black, and Howard, as members of the Special Tennessee Supreme Court, sit in the Western District.

4. The Court notes that Section 1404(a) does not expressly require that a formal motion be made before the Court may transfer an action. *Carver v. Knox County, Tennessee*, 887 F.2d 1287, 1289–93 (6th Cir.1989); *Washington Pub. Util. Group. v. U.S. Dist. Ct.*, 843 F.2d 319, 326 (9th Cir. 1987).

conflicting decisions whenever possible. In *Feller v. Brock,* 802 F.2d 722 (4th Cir.1986), the Fourth Circuit Court of Appeals held that a West Virginia District Court abused its discretion in issuing a preliminary injunction which directly conflicted with a permanent injunction issued by another federal District Court. The court explained that the injunction required the defendant "to choose between coordinate courts and to knowingly violate an outstanding court order." 802 F.2d at 727. Moreover, the court stated, the injunction "did a grave disservice to the public interest in the orderly administration of justice." *Id.* These concerns, the court reasoned, were important even if the parties in the two suits were not identical. *Id.*

In reaching its decision, the Court noted that the District Court should have considered the possibility of transfer under Section 1404(a). *Feller,* 802 F.2d at 729 n. 7.

Similarly, the Sixth Circuit held in a prisoner overcrowding case that the Federal District Court for the Eastern District of Tennessee should not have issued an order which conflicted with a remedy being fashioned on a statewide basis by a federal district judge in the Middle District. *Carver v. Knox County, Tennessee,* 887 F.2d 1287, 1289–93 (6th Cir.1989). Instead, the Court explained, the Eastern District should have transferred the case to the Middle District. *Id.* at 1290.

■ Mr. Hooker, in his Amended Complaint and Motion For Preliminary Injunction, alleges significant actual and potential conflicts between this Court and the *Lillard* Court:

(1) The *Lillard* Court has ordered retention elections for the Supreme Court and Court of Criminal Appeals. Mr. Hooker has asked this Court to order contested elections for those judgeships.

(2) This Court has held that it is bound by the Special Tennessee Supreme Court's interpretation of Tennessee law. The *Lillard* Court is alleged in the Amended Complaint to have interpreted Tennessee law contrary to the decisions of the Special Tennessee Supreme Court.

(3) The *Lillard* Court has held that the plaintiff judicial candidates in that case have

a "property right" to a retention election. Mr. Hooker, in this Court, alleges that he has a "right" to vote in a contested election pursuant to the Orders of the Special Tennessee Supreme Court and the actions of Defendants Burson and Thompson. The rights of candidates and voters, thus, are allegedly in conflict regarding the type of election to be held.

In addition, the Amended Complaint asserts that the *Lillard* decision is erroneous and contrary to law. The alleged error, if any, should be addressed to the *Lillard* Court rather than this Court. This Court does not sit as a Court of Appeals.

Finally, Mr. Hooker alleges that Defendant Burson should follow the ruling of this Court rather than the *Lillard* Court. Defendant Burson should not be required to choose between competing United States District Courts.

The bottom line is that it is in the interest of justice to avoid actual and potential conflicts between injunctions and other orders issued by two different United States District Courts.

### IV. Conclusion

For the reasons described above, this case is transferred to the United States District Court for the Western District of Tennessee, Memphis Division.

It is so ORDERED.